ROLAND R. MARCHANT ET AL., TRUSTEES, ET AL. *vs.* MAYOR AND CITY COUNCIL OF BALTIMORE
ET AL.

*Condemnation Proceeding—Baltimore Harbor Development—*
*Powers of Commission—Public Use—Riparian Land—*
*Value—Evidence—Instructions—View by Jury.*

In view of Acts 1920, ch. 373, authorizing the creation of the Public Improvement Commission of Baltimore, and of Acts 1920, ch. 560, authorizing the creation of the Port Development Commission, and of city ordinances subsequently passed creating the commissions under such statutory authority, the commissions had authority to condemn land for the purpose of harbor development, even in the absence of any city ordinance directed to the condemnation of such land.                    pp. 517-519

That the resolution of one of such commissions reciting the necessity of the condemnation of the property in question, was not passed until after the institution of the condemnation pro-

ceeding in the name of the city alone, was immaterial, it being passed before the petition was amended by joining the commissions as petitioners, and such prior resolution reflecting on the validity of the commission's action in participating in the suit. p. 519

Since the joinder of the city and of the two commissions in the condemnation proceeding, while possibly unnecessary, did not involve any prejudice to the defendants, and the effect of any condemnation was to vest the title to the property condemned in the municipality, it could not be contended that there was a misjoinder of parties. pp. 519, 520

A petition to condemn land for harbor development uses, which stated that the purpose of the proceeding was to condemn river shore land particularly described, together with "all riparian and aquatic rights of" the defendants, as owners of said property, was not defective as failing to describe the area under shallow water between the land described and the river channel, over which defendants had riparian rights for the erection of piers and other suitable uses. p. 520

The condemnation of land for the purpose of developing the harbor of Baltimore according to a comprehensive plan does not involve the taking of property otherwise than for a public use, merely because the property when acquired is to be improved by docks and piers which are to be leased to persons or corporations having a regular or continuous need of such conveniences, the provision in the enabling act for such leases not authorizing their use for purposes unrelated to the general and appropriate port service to which they would normally contribute. pp. 521-523

The requirement in the general condemnation law of an averment in the petition that petitioner is unable to agree with the owners, or that there is a legal disability on the part of one or more of them to contract, is satisfied by the averment of an inability to agree with the owners, and of the legal disability of several of defendants by reason of infancy, and an admission in a motion to quash that the title to the land was partly vested in infant children. p. 523

While the statute provides for a view by the jury of the property sought to be condemned and "adjacent property of the

owners," an inquisition cannot be vacated on appeal by reason of the refusal to allow the jury to view property belonging to defendants on the other side of the same street, in the absence of anything in the record to indicate that any impairment of the value or utility of such property would result from the condemnation of the separated and independently used property sought to be acquired.                            p. 524

The inability at the time to provide the funds necessary to pay for the property is no defense to the proceeding, though the title of defendants cannot be divested until the payment of the adjudged compensation.                       pp. 524, 525

Evidence of recent sales of other property is admissible as possibly reflecting on the value of defendants' land sought to be acquired, provided such other property is sufficiently similar in nature and utility, and not too remote in location, to afford a reasonable basis for a comparative valuation.            p. 525

The question of the degree of similarity which must exist, and the nearness in respect of time and place, is largely left to the discretion of the trial court.                  p. 525

In a proceeding by a city to condemn riparian land for harbor development purposes, defendant may properly show the utility of the land for the construction and maintenance of wharves and piers, but not any utility which may depend on the execution by the city of its plan of harbor development.  p. 526

The price paid by the condemning party for other lands in that vicinity is not admissible.                    p. 526

Instructions, in proceedings to condemn riparian land for the purpose of harbor development, in regard to market value and the mode of its determination, and the right of the jury to consider the owners' right to make improvements out into the water, with the limitations upon such right, *held* proper.

pp. 527, 528

The right of a riparian owner on the harbor of Baltimore to make improvements out into the water in front of his land is subject to the requirement that they shall not interfere with navigation, and to the right of the government to use the land under the water without the owner's consent or compensation to him, and also subject to the right of the government or city to establish, alter or extend the lines beyond which no piers, bulk-

heads, wharves, pilings, or other structures may be built or extended.                                                  p. 528

A prayer granted at petitioner's request having clearly advised the jury as to the defendants' rights in regard to the determination of the value of the property sought to be condemned, *held* that the refusal of a prayer requested by defendants, in substantial agreement with such granted prayer, was not reversible error.                                p. 529

*Decided December 4th, 1924.*

Appeal from the Baltimore City Court (DUKE BOND, J.).

Condemnation proceeding by the Mayor and City Council of Baltimore and others against Roland R. Marchant and Walter C. Mylander, Trustees. From a judgment for petitioners, defendants appeal. Affirmed.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*John L. Sanford* and *Walter C. Mylander,* with whom were *Charles M. Armstrong* and *Marchant & Kraus* on the brief, for the appellants.

*Allen A. Davis, Assistant City Solicitor,* with whom was *Philip B. Perlman, City Solicitor,* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

In a condemnation proceeding by the Mayor and City Council of Baltimore, the Port Development Commission, and the Public Improvement Commission of that city, the appellants were awarded $64,120 for approximately five and three-quarters acres of land, with appurtenant riparian rights, situated on the southwest shore of the Patapsco River within the city limits. The land was condemned for the purposes of a comprehensive plan of harbor development for which provision has been made by the general assembly.

o

The first of the questions to be considered is whether this proceeding for the condemnation of the property was duly authorized. A motion to quash asserted the contrary. The contention is that no ordinance was passed for the acquisition of the land by the direct exercise of the city's general charter power of eminent domain, and that neither of the commissions uniting in the petition to condemn was empowered to take such action.

The City of Baltimore has the power under its charter to acquire by purchase or condemnation any land which it may need for "any public or municipal purpose." Charter (1915) sec. 6 (4). One of its most important purposes is the care and improvement of its harbor, including the erection and maintenance of wharves and piers. Charter, sec. 6 (8).

The Port Development Commission was created under the terms of chapter 560 of the Acts of 1920, which authorized the city, with the approval of its voters, to borrow fifty million dollars "for developing, extending and improving the harbor of Baltimore and its facilities," and which provided that the fund so obtained should be administered and expended, and its "entire disposition" supervised, by a commission appointed by ordinance of the Mayor and City Council. The commission was invested by the act with the right and power on behalf of the municipality "to acquire from time to time by gift, purchase, lease or other method of acquisition, or by condemnation, any lands or property * * * which may be proper or desirable in connection with the objects" which the act specified. Ordinance No. 377 of the Mayor and City Council, approved July 2, 1920, appointed the commission and defined its powers in conformity with the provisions of the statute. A resolution of the commission, passed April 8, 1924, declared the acquisition of the property involved in this proceeding to be desirable and necessary for the accomplishment of the harbor development objects mentioned in Ordinance No. 377 and in chapter 560 of the Acts of 1920.

The Public Improvement Commission was appointed in pursuance of chapter 373 of the Acts of 1920, which provided for a loan of twenty-six million dollars for various municipal improvements. It was directed that $2,500,000 of the fund should be used for developing and improving the harbor of Baltimore, including the acquisition of sites and the construction of wharves, docks, piers and warehouses. Provision was made by the act for the creation by ordinance of a commission with full power to administer the improvement fund, to provide for its expenditure, and to supervise its entire disposition. Ordinance No. 376, approved July 2, 1920, appointed the commission in compliance with the statutory direction. By a subsequent ordinance, No. 576, approved April 14, 1921, it was enacted that the Commission should have power to acquire by condemnation any property needed in its judgment for any of the purposes contemplated by Ordinance No. 376. The necessity for the acquisition of the land now in process of condemnation was formally stated in a resolution of the commission passed February 12, 1923.

By the General Condemnation Law (Code, art. 33A), under which the present case has been conducted, it is provided that "any municipal or other corporation, commission, board, body, or person, which under the laws of this State, has the right to acquire property by condemnation, shall acquire such property if condemnation proceedings be resorted to, in pursuance of, and under the provisions of this article, anything in any other Public General Law, or Public Local Law, or private or special statute, to the contrary notwithstanding * * *."

While the Mayor and City Council of Baltimore apparently passed no ordinance providing specifically for the condemnation of the property with which this case is concerned, there are duly enacted ordinances effectuating the intention of the Legislature that full power to administer the funds appropriated, under the statutes to which we have referred, for harbor improvement purposes, should be vested in the two commissions which they require to be created, and each of

those commissions has passed a resolution declaring the necessity for the acquisition of the land embraced in the pending condemnation. The authority of the commissions does not rest upon a mere delegation of right and duty from the municipality, but is supported by specific statutory provisions. The resolutions passed by the commissions, in the exercise of the powers conferred by statute and ordinance, are sufficiently authoritative to obviate any occasion, which might otherwise exist, for an ordinance directed to the particular condemnation now being considered.

It appears that the resolution of the Port Development Commission was passed after the institution of this proceeding, and we are, therefore, asked to disregard that resolution in deciding whether the condemnation is valid. The original petition in the case was filed only in the name of the Mayor and City Council of Baltimore, but it was later amended by the joinder of the two commissions with the city as petitioners. Before this amendment was made, the Port Development Commission passed its resolution as to the necessity for condemning the land which the petition describes. It was upon the basis of the amended petition, and of the answers thereto, that the issues in the case were tried and determined. The proceeding originated for the Port Development Commission when it was made a party, and its prior resolution should be considered as reflecting upon the validity of its action in participating in the suit. It is not essential to decide whether the petitioners would have had an equal right to maintain the proceeding separately under the conditions shown by the record. There can be no doubt that they collectively represent all of the ample power conferred by the General Assembly for the acquisition of property to improve and enlarge the port facilities upon which the prosperity of Baltimore is vitally dependent. While it may have been unnecessary for all of the petitioners to unite in the action, yet as their joinder could not prejudice the defendants, and as the effect of any condemnation for the objects therein contemplated is to vest in the municipality itself the title to the

property condemned, we see no reason to hold the proceeding invalid on the ground of a misjoinder of parties.

The motion to quash further asserts that the petition for the condemnation does not sufficiently indicate the riparian rights to be acquired as appurtenant to the land area which it mentions. As stated in the petition, it is the purpose of the proceeding to condemn the river shore land particularly described, together with "all riparian and aquatic rights of the party or parties defendant hereto and each of them, as the owner or owners of said property." There is said to be a large expanse of shallow water between the land mentioned in the petition and the present deep water channel of the river, and it is contended that this area should have been defined in the petition because the defendants' right to utilize the submerged ground for the erection of piers, and for other suitable uses, which may not interfere with navigation, is a property interest of great value. There was no question in the case as to the right of the defendants to have the nature and scope of their riparian privileges and interests considered upon the question as to the amount of the damages to which they were entitled. The area of the under-water ground to which the riparian rights could extend was the subject of inquiry in the course of the trial. The precise limits of that area did not appear to be definable by the proof. It was the designated purpose of the condemnation to appropriate the land of the defendants for harbor development uses, and its water frontage was an obviously important element of its value and utility. No misapprehension upon that subject could have been caused by the omission to include in the petition a description of the under-water acreage over which the appurtenant riparian rights could be exercised. The general description of those rights contained in the petition was adequate, in our judgment, for the purposes of the present proceeding.

It is urged that the condemnation is invalid because it depends in part upon chapter 560 of the Acts of 1920, which provides for the administration of a fifty million dollar fund by the Port Development Commission in developing, extend-

ing and improving the harbor of Baltimore and its facilities,
and includes a provision for the leasing of the property ac-
quired or improved under its terms. The argument is that
the act, in thus proposing to authorize the condemnation of
property to be used by prospective lessees from the city,
violates the constitutional limitation of the power of eminent
domain to the taking of private property solely for a public
use. In view of the objects to which the act is directed, and
of the important public service which it was designed to pro-
mote, we are of the opinion that the objection to its validity
should not prevail. The development of the harbor of Balti-
more according to a comprehensive plan, by which the com-
merce of the port will be most advantageously served, and its
future growth encouraged, is a project of distinctively pub-
lic interest and purpose. It is concerned with the improve-
ment and extension of a harbor service which constitutes an
essential part of a system of water transportation connecting
the port of Baltimore with the markets of the world. The
public character of the use to which the harbor structures are
devoted is not affected by the fact that they may not all be
made available for the indiscriminate use of the public. By
the allocation or lease of certain docks for the separate use
of persons or corporations having a **regular** or continuous
need of such conveniences, the city does not convert into a
private use the public port service which is thus in part
provided. The municipal ownership is not thereby surren-
dered, and the use remains consistent with the public pur-
pose for which the port accommodations as a whole are
maintained.

In 1 *Dillon on Municipal Corporations* (5th Ed.), sec. 269,
it is said: "The construction of docks and wharves by a
municipality for general public use is a public purpose which
justifies the exercise of the power of eminent domain. To
minister to the necessities of commerce by providing fit and
proper places in a seaport where ships can be loaded and
unloaded with all proper facilities, is a public duty owing
by the State and through it by the municipality which gov-
erns and controls the port. * * * If a permanent pier and

an exclusive right to its use be a necessity of large steamship lines, without which business cannot properly be transacted, and in the absence of which steamers will resort to other ports, then the duty rests upon the State or municipality to furnish such quarters for a fair compensation, or else the State is bound to permit the steamship companies to obtain such accommodations from private owners. Having undertaken the duty imposed upon it by the State to provide such accommodations as the interests of commerce fairly require, all appropriate acts of a city done in the performance of that duty are for a public purpose. Hence land taken for wharves is taken for a public purpose, although some portions of the land actually used may be thereafter, in the discretion of the city, divided off and placed in the exclusive possession of a lessee for the sole purpose of using it in the transaction of the necessary business connected with the loading and unloading of passengers and cargoes of ships and steamers."

It is said in 20 *C. J.* 576: "A grant of power to a city to condemn for piers is not invalid because it vests the city with power to lease or to give the exclusive use of some of the piers to private persons or to devote them to specific kinds of commerce, * * *."

The statements just quoted were based on the decisions in *Matter of Mayor etc. of N. Y.*, 135 N. Y. 253, and *Dyer* v. *Baltimore,* 140 Fed. 880. In the first of those cases Judge Peckham, speaking for the court, said, in reference to the right of the City of New York to condemn land for use in the construction of piers under a statute which permitted them to be leased: "When used by lessees under the facts already stated the use is a public one. The use is public while the property is thus leased because it fills an undisputed necessity existing in regard to these common carriers by water, who are themselves engaged in fulfilling their obligations to the general public; obligations which could not otherwise be properly or effectually performed."

In *Dyer* v. *Baltimore,* a contention that the city could not validly condemn property for the construction of piers which

were intended to be leased to private persons or corporations was overruled by Judge Morris, who supported that conclusion by referring to the New York case already cited, and said: "Regard must be had to the methods by which the public wharves of a city are availed of in modern commerce. Public landings on a river bank open to every vessel that chooses to make fast to it are not suitable to every kind of modern transportation by water."

The provision in the Port Development Act for the leasing of the piers to be included in the enlarged facilities of Baltimore harbor should not be construed as authorizing their use for purposes unrelated to the general and appropriate port service to which they would normally contribute. The act should be given a construction in harmony with its evident intent to increase the capacity and improve the convenience of the port as a public utility.

It is further objected that there was no effort to obviate the condemnation by agreement with the owners of the land to be appropriated. There is an allegation in the petition of an inability to agree with the owners and of the legal disability of several of the defendants by reason of infancy. In a motion to quash, filed before the amendment of the petition, it was alleged that the title to the land sought to be condemned was partly vested in infant children who were named in the motion, and who were afterwards made parties to the proceeding. The general condemnation law requires an averment that the petitioner is unable to agree with the owners, or that there is a legal disability on the part of one or more of them to contract. According to the admission in the motion to quash, one of those alternative conditions appeared to exist.

The questions we have discussed were raised by motions and prayers on which the trial court made the rulings opposed by six of the fifty exceptions in the record. They are the first, twenty-seventh, twenty-eighth, twenty-ninth, forty-seventh and forty-eighth.

The basis of the second, third and twenty-fifth exceptions was removed by a subsequent ruling.

The property condemned is separated by Hanover Street from other land, on the west side of the street, which the defendants own. Prior to the visit of the jury to the premises, to make the inspection authorized by law, the counsel for the defendants requested that the jury be shown the property on the west side of Hanover Street. The court declined to give the instruction. To this ruling the fourth exception was reserved. It does not appear that there were any common or related uses to which the two areas were subjected. No proffer was made to show that the value of the defendants' land to the west of the street would be diminished by the city's appropriation of the property now in litigation. It is for the purpose of aiding the jury in estimating the damages to be awarded for the property taken, and for consequential injury to the owners' remaining land, that the statute provides for a view by the jury of the property sought to be condemned, and "adjacent property of the owners." (Code, art. 33-A, sec. 8.) In the absence of anything in the record to indicate that any impairment of the value or utility of the defendants' land west of Hanover Street would result from the condemnation of the separated and independently used property which is sought to be acquired in this proceeding, we could not rightfully vacate the inquisition for the reason assigned in the fourth exception. This view is supported by 2 *Lewis on Eminent Domain* (3rd Ed.), sec. 697; 10 *R. C. L.* 157; 20 *C. J.* 735-8; *Wellington* v. *Boston & Maine Railroad,* 164 Mass. 380; *Sharpe* v. *U. S.* 112 Fed. 893, 57 L. R. A. 932, affirmed in 191 U. S. 341; and *White* v. *Metrop. W. S. E. R. Co.,* 154 Ill. 620. In the case of *Baker* v. *P. R. R. Co.,* 236 Pa. 479, cited by the appellants, it appeared that the land, of which a part separated by a turnpike was being condemned for railroad purposes, had been cultivated as a single tract.

An inquiry on cross-examination as to whether the Port Development Commission had available funds to pay for the property in question, at the time of the passage of its resolution of April 8, 1924, was disallowed, and this ruling is questioned by the fifth exception. The title of the de-

fendants could not be divested until the payment or tender of duly adjudged compensation, but the ability of the Port Development Commission to provide the necessary funds at the time it determined upon the acquisition of the property was immaterial.

No reversible error has been found in the rulings disputed by the sixth, thirteenth, fourteenth and sixteenth exceptions.

The seventh to eleventh, seventeenth, nineteenth, twentieth, twenty-third, thirty-fourth, thirty-eighth, thirty-ninth, fortieth and forty-first exceptions relate to admitted or proffered evidence as to sales of property as possibly reflecting upon the value of the defendants' land desired by the city. In its rulings upon the inquiries to which these exceptions refer we think the lower court recognized the proper scope and restrictions of such an investigation. Proof was admitted as to recent sales of property sufficiently similar in nature and utility, and not too remote in location, to afford a reasonable basis for a comparative valuation. The question as to "the degree of similarity which must exist, and the nearness in respect of time and place," is largely left to the discretion of the trial court. *Patterson* v. *Baltimore*, 127 Md. 241. There was no abuse of such discretion in the rulings now being reviewed.

The twelfth and forty-fourth exceptions were taken to the disallowance of questions which were repeated in a different form and answered.

On cross-examination Mr. Gilbert, one of the city's real estate experts, was asked: "Don't you think that this land, in itself, apart from the land on either side of it, is admirably situated for the very purpose for which the city is seeking to condemn it in this case?" An objection to the question was sustained. The same witness was further asked on cross-examination: "Did you consider this utility when you said the boat club utility was the highest utility?" Such a statement had been made by the witness in reference to the boat club use to which the land was then applied. The first utility mentioned in the question was the project of the

Port Development Commission to which a prior interroga-
tory had referred. The court sustained objections to both of
the questions we have quoted. These rulings are the subject
of exceptions fourteen and one-half and eighteen. Without
objection the witness had previously answered on cross-exam-
ination a question as to whether the land was not admirably
situated for piers and wharves larger than could be located
elsewhere in the harbor. Immediately after the refusal to
permit the question covered by the eighteenth exception the
witness was asked, while still under cross-examination,
whether he considered the utility of the property for dock
purposes, when he stated that its highest utility was that
for which it was now occupied by a boat club, and he an-
swered in the affirmative. It is thus apparent that the de-
fendants were not refused permission to show the utility
of their land for the construction and maintenance of
wharves and piers. They undoubtedly had the right, which
they afterwards freely exercised, to prove such an adapta-
bility as tending to enhance the value upon which the jury's
award would be predicated. *Brack* v. *Baltimore,* 125 Md.
378. But the right to prove for that purpose any utility
which may depend upon the execution of the city's extensive
plan of harbor improvement could not be conceded. *Brack*
v. *Baltimore,* 128 Md. 430-439; *Bonaparte* v. *Baltimore,*
131 Md. 80. This appears to have been the object of the
cross-interrogatories which were disallowed, and only to that
extent was the inquiry as to the utility of the property re-
stricted.

By questions to which the fifteenth and twenty-sixth excep-
tions refer, the defendants proposed to ascertain the amounts
which the city had paid for lands in the vicinity of the tract
now in course of condemnation. Such inquiries were not
permissible, as the price paid by the condemning party for
other properties is not regarded as a satisfactory standard
of value. *Bonaparte* v. *Baltimore, supra.*

The twenty-first and twenty-second exceptions refer to in-
quiries which were pertinent to the subject of the uses for

which the land was available, and objections to the questions were properly overruled.

The twenty-fourth exception challenged the qualification of a witness who testified for the petitioners as a real estate expert. There was no error in the ruling that he was qualified.

The statement of which the thirtieth exception complains had been stricken out as the result of an earlier objection.

The hearsay rule would have been violated by the admission of testimony to which the questions mentioned in the thirty-first, thirty-second and thirty-third exceptions relate.

A harbor map which had been excluded as against the thirty-fifth, thirty-sixth and thirty-seventh exceptions was afterwards admitted.

Over the defendants's objection, as shown by exception forty-two, the answer of one of their witnesses to a cross-interrogatory was excluded as not responsive. This ruling shows no error.

The forty-third and forty-fifth exceptions involved inquiries as to the purpose of the condemning authorities to lease the property, acquired from the defendants, after it shall have been improved. We have stated our views upon this question.

The subject of the forty-sixth exception was the refusal to allow a question beyond the proper scope of the cross-examination in which it was propounded.

By the only remaining exception we are required to review the lower court's action in granting five prayers of the petitioners, rejecting ten and modifying one of the defendants' prayers, and giving an instruction which the court itself prepared.

The granted prayers of the petitioners instructed the jury that one of the issues in the case was the market value of the property condemned; that such value was to be determined as of the time of the trial, but without reference to any effect which might be produced by the improvements for which it is being taken; that market value is the price which a purchaser willing but not compelled to buy would pay, and

which an owner willing but not compelled to sell would accept, for the property; that the jury had a right to disregard the estimate of any witness as to the value of the property if in their judgment such estimate was not based upon sales of similar property or other sufficient reasons; that the jury should not consider any evidence which the court had excluded or any information which the jury might have received from any source other than their view of the property and the admitted evidence, and should not be influenced by any knowledge they might have as to payments by the city for other property acquired for public purposes; that in their determination as to the market value of the land taken, the riparian rights could be considered; that among these was "the exclusive right to make improvements out into the water in front of said 5.74 acres of fast land, provided such improvements do not interfere with the navigation of the stream, but that this right to improve out into the river, until actually availed of, is subject to the right of the United States Government to use the land under the water in aid of navigation without the consent of the owner and without compensation, and this right to improve or wharf out into the river is subject also to the right of the Mayor and City Council of Baltimore and the United States Government to establish, alter or extend the lines beyond which no piers, bulkheads, wharves, pilings or other structures of any character may be built or extended." These instructions were unobjectionable, as they duly recognized and reasonably defined the defendants' rights with respect to the award of damages and the considerations by which it could be properly governed. The limitations upon the right of the defendants to make improvements in the bed of the river were correctly stated. Code, art. 54, sec. 48; Charter of Baltimore City (1915), sec. 6 (8); *Lewis Blue Point Oyster Cultivation Company* v. *Briggs,* 229 U. S. 82; *Chandler-Dunbar Water Power Company* v. *United States,* 229 U. S. 53; *Scranton* v. *Wheeler,* 179 U. S. 141; *Gibson* v. *United States,* 166 U. S. 269; *B. & O. R. R. Company* v. *Chase,* 43 Md. 23; 27 R. C. L. 1335, 1338.

The first, second, first-A, second-A, third, fourth, and fifth prayers of the defendants challenged the right of the petitioners to maintain the condemnation proceeding and they were properly refused.

The defendants' sixth prayer was defective in its reference to the independent availability of the land "for the very purpose or utility" for which it is being condemned, as reflecting upon the amount of damages to be awarded. Its adaptability to pier uses was a proper consideration, but not its utility for the particular improvement project which was the occasion for its appropriation. The prayer was not sufficiently clear upon that point.

The seventh prayer of the defendants was granted. Their eighth prayer, if given a legitimate interpretation, defined their riparian rights in substantial agreement with the statement we have quoted from the full and explicit instruction on the subject granted at the petitioners' request. As the jury were actually and clearly advised as to the defendants' rights in that respect, the refusal of their eighth prayer was not reversible error.

There was no evidence supporting the theory of the defendants' ninth prayer, and its rejection was proper.

As modified and granted the defendants' tenth prayer was the same in practical effect as when offered. No error can be attributed to the modification.

The court's own instruction was concerned solely with the question as to the right to condemn, and it is in harmony with the views we have expressed as to the existence of that right.

*Judgment affirmed, with costs.*