ROBERT WILKINSON JOHNSON ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE.

[No. 35, October Term, 1929.]

*Decided January 7th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edgar Allan Poe,* for the appellants.

*A. Walter Kraus, City Solicitor,* and *Allen A. Davis, Assistant City Solicitor,* for the appellee.

Digges, J., delivered the opinion of the Court.

On January 21st, 1929, the Mayor and City Council of Baltimore, a municipal corporation, filed its petition in the Baltimore City Court against the appellants, seeking to have the property belonging to the appellants, known as No. 101 West Franklin Street in said city, condemned for a site for a free public library, under the provisions of article 33A of the Code. These proceedings were instituted pursuant to the authorization contained in Ordinance No. 559 of the Mayor and City Council, approved December 7th, 1928. The petition describes the property and sets forth the authorization contained in the said ordinance; and alleges that the petitioner is unable to agree with the owners upon a price to be paid therefor, and that it is necessary that said lot of ground, with all improvements, rights and appurtenances, and the interest of the owners therein, shall be acquired by condemnation. The prayer of the petition is that the court will have the lot of ground described, together with the improvements, rights and appurtenances, as fully and particularly described in the petition, condemned, in fee simple, for the purposes set forth in the petition, that is to say, for a site for a free public library, in accordance with the requisites of the law in such cases made and provided, the procedure to be that prescribed by Chapter 463 of the Acts of the General Assembly of Maryland passed at the session of 1914, now codified as article 33A.

To this petition the appellants (defendants below) demurred, setting forth various reasons why the demurrer should be sustained, among which are: That the petitioner has no power or authority to condemn the property of the defendants for the purpose of erecting thereon a free public library; that Ordinance No. 559, under which the petitioner is proceeding, is illegal and void, because in violation of section 7 of article 11 of the Constitution of Maryland, in that its necessary effect is to create an indebtedness of the Mayor and City Council of Baltimore without previous authorization therefor by an Act of the General Assembly of Maryland and by an ordinance of the Mayor and City Council of Balti-

more submitted to and approved by the legal voters of said city; and further, that no expenditure of public funds of the Mayor and City Council of Baltimore for a free public library is authorized; and that Ordinance No. 559 is illegal and void, because it is in violation of section 40 of article 3 of the Constitution of Maryland, in that there is no appropriation of public funds of the Mayor and City Council of Baltimore to secure the payment of compensation for the property attempted to be condemned.

The demurrer was overruled, and the appellants then filed an answer, in which it is alleged: (a) That the petitioner is not authorized by law to condemn land for a free public library; (b) that the petitioner is not authorized by its charter to condemn land for a free public library; (c) that the petitioner is not authorized by any act of the legislature to condemn land for a free public library; that chapter 328 of the Acts of 1927 only authorizes the petitioner to create a loan and apply the proceeds thereof to the acquisition of land and the erection thereon of a free public library, and can only become effective upon the approval by the voters of Baltimore City of a valid ordinance for that purpose as required by section 7 of article 11 of the Constitution of Maryland; that Ordinance No. 1053, in pursuance of said act, approved April 13th, 1927, delegates the final selection of a site and the adoption of plans for the proposed free public library to the trustees of the Enoch Pratt Free Library, a private corporation, and is invalid. The answer further sets forth the provisions of Ordinance No. 1053, and denies that the petitioner desires to acquire the property mentioned for a site for a free public library under the control and management of the petitioner in the sense the terms "free public library" were used in chapter 328 of the Acts of 1927, or in which sense such terms would have to be used should any power therefor, as alleged by the petitioner but denied by the defendants, exist in the Baltimore City Charter; but on the contrary, the defendants aver that the petitioner desires and intends to acquire said property for the avowed use and benefit of the Enoch Pratt Free Library, a private corporation, to

be controlled and managed thereby, in accordance with the act of incorporation, being chapter 181 of the Acts of 1882, or for the avowed purpose and object of leasing at a nominal rental the property so to be acquired to the Enoch Pratt Free Library, a private corporation, and to be controlled and managed thereby. The answer further avers that the petitioner is without any power to condemn the property mentioned in the petition for the aforesaid use, benefit, purpose, and object; that there is no act of the legislature authorizing the credit of the petitioner to be given, loaned to or in aid of the Enoch Pratt Free Library, a private corporation, other than for its equipment, maintenance or support, and no ordinance of the petitioner in pursuance thereof approved by the voters of Baltimore City as required by section 7 of article 11 of the Constitution of Maryland, and therefore the credit of the petitioner cannot be used for the purpose of condemning the property mentioned for the aforesaid use, benefit, purpose, and object, and the proceedings are in violation of section 7 of article 11 of the State Constitution.

Subsequently the appellants filed a motion to quash the condemnation proceedings, relying upon practically the same grounds for sustaining the motion to quash as those set forth in the demurrer and answer. The motion to quash was overruled, and the following prayer offered by the defendants was rejected: "The defendants pray the court to instruct the jury that the Mayor and City Council of Baltimore is without power to condemn the property of the defendants, sought to be condemned in this proceeding, because the purpose, object and effect of said condemnation proceeding is to give or loan to or in aid of the Enoch Pratt Free Library of Baltimore City, a private corporation, the credit of the Mayor and City Council of Baltimore without such credit being authorized by an act of the General Assembly of Maryland and by an ordinance of the Mayor and City Council of Baltimore, approved by the legal voters of the City of Baltimore."

The trial resulted in a judgment of condemnation and an award to the appellants of $75,000 for the property of the

appellants so condemned. The appeal is from that judgment.

There are a number of exceptions taken on behalf of the appellants during the progress of the trial to the sustaining of objections by the city to questions propounded on behalf of the appellants. As we view the case presented by the record, the real and important question is: Has the Mayor and City Council of Baltimore the power and authority to condemn land for the site of a free public library?

Section 7 of article 11 of the Constitution, under the subtitle "City of Baltimore," provides: "From and after the adoption of this Constitution, no debt (except as hereinafter excepted), shall be created by the Mayor and City Council of Baltimore; nor shall the credit of the Mayor and City Council of Baltimore be given or loaned to, or in aid of any individual, association, or corporation; nor shall the Mayor and City Council of Baltimore have the power to involve the City of Baltimore in the construction of works of internal improvement, nor in granting any aid thereto, which shall involve the faith and credit of the city, nor make any appropriation therefor, unless such debt or credit be authorized by an Act of the General Assembly of Maryland, and, by an ordinance of the Mayor and City Council of Baltimore, submitted to the legal voters of the City of Baltimore, at such time and place as may be fixed by said ordinance, and approved by a majority of the votes cast at such time and place." This section of the Constitution required, before any debt shall be created, or the credit of the city be given or loaned, or the faith and credit of the city be granted, that such debt or credit be authorized by an act of the General Assembly of Maryland and by an ordinance of the Mayor and City Council submitting the same to the legal voters of the city at such time and place as may be fixed by the ordinance, and that such proposed loan be approved by a majority of the votes cast at such election. In other words, there are three conditions precedent before the city can create a debt or pledge its credit: First, there must be an enabling act

passed by the General Assembly of Maryland authorizing said loan; second, there must be an ordinance passed pursuant to the enabling act, submitting the proposition to the qualified voters of the city, and, third, at an election provided for by the ordinance, the proposed loan must be approved by a majority of the voters participating at such election.

Applying these tests to the present case, we find that chapter 328 of the Acts of 1927 is entitled:

"An Act to authorize the Mayor and City Council of Baltimore to issue certificates of indebtedness of said corporation to an amount not exceeding three million dollars ($3,000,000) for the purpose of defraying the cost and expenses of the acquisition by purchase or condemnation of land and construction thereon of a free public library in Baltimore City; authorizing the submission of an ordinance for that purpose to the legal voters of the City of Baltimore; empowering the Mayor and City Council of Baltimore to provide by ordinance for the expenditure of the proceeds of said loan; and for the control and management of the library, and providing for the method of expenditure of said certificates of indebtedness."

By section 1 of said act it is provided:

"That the Mayor and City Council of Baltimore be, and it is hereby authorized to issue the certificates of indebtedness of said corporation to an amount not exceeding three million dollars ($3,000,000), said certificates of indebtedness to be issued from time to time and for such amounts, payable at such periods and to bear such rate of interest, all as the Mayor and City Council of Baltimore shall by ordinances from time to time provide; but no stock or bonds shall be issued in whole or in part unless the ordinance of the Mayor and City Council of Baltimore providing for the issuance thereof shall be submitted to the legal voters of Baltimore City at such time and place as may be fixed by said ordinance, and be approved by a majority of

100

the votes cast at such time and place as required by section 7 of article 11 of the Constitution of Maryland. * * *

"Sec. 2. * * * That the proceeds of the certificates of indebtedness not exceeding their par value hereby authorized to be issued shall be used for the acquisition by purchase or condemnation of land and construction thereon of a free public library in Baltimore City."

On April 13th, 1927, the Mayor and City Council passed Ordinance No. 1053, as follows:

"An Ordinance to authorize the Mayor and City Council of Baltimore (pursuant to chapter 328 of the Acts of the General Assembly of Maryland of 1927) to issue its certificates of indebtedness to an amount not exceeding three million dollars ($3,000,000), to be used for the acquisition, by purchase or condemnation, of land and construction thereon of a free public library in Baltimore City.

"Whereas, by chapter 328 of the Acts of the General Assembly of Maryland of 1927, the Mayor and City Council of Baltimore is authorized to issue its certificates of indebtedness to an amount not exceeding three million dollars ($3,000,000) in the manner and upon the terms set forth in said act, the proceeds thereof, not exceeding the par value of said certificates of indebtedness, to be used for the acquisition, by purchase or condemnation, of land and construction thereon of a free public library in Baltimore City; and whereas money is now needed for said purposes.

"Sec. 1. Be it ordained by the Mayor and City Council of Baltimore, that the commissioners of finance be, and they are hereby authorized and directed to issue the certificates of indebtedness of the City of Baltimore to the amount of three million dollars ($3,000,000) from time to time as the same may be required for the purposes herein above mentioned, and the said certificates of indebtedness shall be sold by

said commissioners of finance from time to time, and at such times as shall be requisite, and the proceeds of the sale of said certificates of indebtedness, not exceeding their par value, shall be used for the purposes hereinbefore named, provided that this ordinance shall not go into effect unless it shall be approved by the majority of the votes of the legal voters of the City of Baltimore cast at the time and place hereinafter designated by this ordinance. * * *

"Sec. 4. And be it further ordained, That this ordinance shall be submitted to the legal voters of the City of Baltimore, for their approval or disapproval at the municipal election to be held in Baltimore City on the first Tuesday after the first Monday in May, 1927."

After giving the notice of the submission, as required by the terms of Ordinance 1053, the loan set forth in the enabling act and in the ordinance was submitted to the legally qualified voters of the city and approved by a majority of the votes cast at the election held on the first Tuesday after the first Monday in May, 1927. It is therefore clear that the constitutional requirements contained in section 7 of article 11 have been fully complied with.

By Ordinance 559, approved December 7th, 1928, which was "An ordinance to authorize the acquisition by purchase or condemnation of certain pieces or parcels of land in the City of Baltimore, situated in the block bounded on the north by Franklin Street, on the east by Cathedral Street, on the south by Mulberry Street and on the west by Park Avenue, for a site for a free public library, and directing the city solicitor to institute the necessary condemnation proceedings," three lots or parcels of ground are described, which by the terms of the ordinance are authorized to be condemned, one of which is the lot known as No. 101 West Franklin Street, belonging to the appellants. The proceedings instituted for condemnation of this property, in conformity with the provisions of Ordinance 559, are regular and in strict con-

formity with article 33A of the Code, prescribing the procedure in condemnation cases.

While it is not denied by the appellants that the enabling Act of 1927, ch. 328, was passed, as also Ordinance 1053 submitting the loan to the voters of Baltimore City and their ratification thereof, it is contended that there is no authority contained in the Charter of Baltimore City or in the enabling act for the condemnation of land by the city for the erection thereon of a free public library; that while the enabling act, by section 2 thereof, authorizes and directs the proceeds of the certificates of indebtedness to be used for the acquisition by purchase or condemnation of land and construction thereon of a free public library in Baltimore City, it does not, in fact, authorize the condemnation of the land.

Subsection 4 of section 6 of the Baltimore City Charter, as codified in 1927, provides, under the title "General Powers", that the Mayor and City Council of Baltimore shall have full power and authority:

"To acquire by purchase or condemnation any land or any interest therein which it may require for school-houses, engine-houses, court-houses, markets, streets, bridges and their approaches, the establishment or enlargement of parks, squares, gardens or other public places, the establishment of esplanades, boulevards, parkways, park grounds or public reservations, around, adjacent, opposite, or in proximity or leading to any public building or buildings, or which it may require for any other public or municipal purpose."

In *Marchant v. Baltimore,* 146 Md. 513, this court, speaking through Judge Urner, said: "The City of Baltimore has the power under its charter to acquire by purchase or condemnation any land which it may need for 'any public or municipal purpose.' Charter (1915), sec. 6 (4)." It is true that in condemnation proceedings whereby the State or municipality is seeking to acquire, against the consent of the owner, private property for public use, thereby exercising one of the high attributes of sovereignty, the provisions of the

law authorizing such taking must be strictly complied with, and the power to condemn must definitely be found. In this case, giving full force to the rule as above stated, we find full, ample, and definite authority on the part of the city to acquire the property in question by condemnation. The city charter authorizes the condemnation of land for the purposes specifically mentioned in subsection 4 of section 6, and adds "or which it may require for any other public or municipal purpose"; and this court, in *Marchant v. Baltimore, supra,* has decided that the city has power to condemn land for any public or municipal purpose. When we take the provisions of the charter as construed in the *Marchant* case, in connection with the enabling act, chapter 328 of the Acts of 1927, which specifically authorized a loan of $3,000,000 for the purpose of acquiring by purchase or condemnation a site for a free public library, and which was submitted by ordinance to the voters and approved by them, there can be no doubt that the constitutional and other legal requirements have been fully complied with, provided a free public library is a "public or municipal purpose."

In *Marchant v. Baltimore, supra,* the court was considering condemnation proceedings for the improvement of the harbor facilities, and it was said that one of the city's most important purposes is the care and improvement of its harbor, including the erection and maintenance of wharves and piers. The same can with equal force and accuracy be said of the establishment and maintenance of free public libraries. At the present time it is generally recognized and conceded by all thoughtful people that such institutions form an integral part of a system of free public education and are among its most efficient and valuable adjuncts. An enlightened and educated public has come to be regarded as the surest safeguard for the maintenance and advancement of the progress of civilized nations. More particularly is this true in republican forms of government, wherein all citizens have a voice. It is also true that education of the people ought not to and does not stop upon their leaving school, but

must be kept abreast of the times by almost constant reading and study. It would therefore seem that no more important duty or higher purpose is incumbent upon a state or municipality than to provide free public libraries for the benefit of its inhabitants.

In *Nichols on Eminent Domain* (2d Ed.), vol. 1, p. 212, the author states: "A public library maintained by a municipal corporation and open to the use of all inhabitants is clearly for the public use." And it is said in *Dillon on Municipal Corporations* (5th Ed.), sec. 988: "It may be laid down as a general rule that educational purposes are public purposes, and are not to be considered unrelated to the objects of a municipal corporation, unless made so by the statute laws of the state, or excluded from the objects for which the particular corporation was formed by the laws which created it." In *State ex rel. Lacrosse Public Library v. Bentley*, 163 Wis. 632, the court said: "The test to be applied in determining whether a particular agency may be employed by the State or some particular subdivision therefor by legislative authorization to perform any particular work is not whether the agency is public, but whether the purpose is public within the legitimate functions of our constitutional government." In *Finan v. Cumberland*, 154 Md. 563, Chief Judge Bond, speaking for the court, said: "What is a public purpose for which public funds may be expended is not a matter of exact definition; it is almost entirely a matter of general acceptation * * * For many years there has been general statutory authority given to municipal and county authorities in Maryland to provide hospitals or temporary places for the reception of the sick." The same statutory authority may be found in regard to legislation for the establishment of public libraries. Section 174 of article 77 of the Code provides: "The boards of county commissioners shall have power to establish and maintain central free public libaries at all the county seats of their respective counties, with branches in such places within the limits of said counties as the demand of the people of the vicinity may justify, so as to

give them convenient access to the free library and reading rooms, and the legislative authority of any incorporated municipality shall have power to establish public libraries in like manner for said municipality."

It is also contended by the appellants that, assuming the power to condemn has been conferred upon the city, it cannot be invoked for a public library to be occupied, operated, managed and controlled by the Enoch Pratt Free Library, not a municipal agency but a private corporation. Evidence was adduced on behalf of the appellants for the purpose of establishing that the avowed purpose of the city authorities is to turn over the management and control of the property sought to be acquired by condemnation, and the buildings thereon erected, to the Enoch Pratt Free Library, a private corporation. This testimony, on motion, was stricken out; and we find no error in that action of the lower court, as we do not think that the legality of such action on the part of the city authorities, should they in the future carry out what the appellants contend is their avowed purpose, is in any sense an issue to be considered and decided in this case. Such a question would involve the legality of some future act of the city, which, if thought to be illegal, can be presented and decided in proceedings for that purpose. The presumption is that if such act is illegal, the city will refrain from so acting; and that question has no proper place in this case, involving, as it does, only the legality of the condemnation proceedings and judgment from which the appeal is taken.

The final contention of the appellants with which we feel called upon to deal is that raised by the demurrer, in which they allege that Ordinance 559, authorizing the acquisition of their property, is illegal because it is in violation of section 40 of article 3 of the Constitution of Maryland, in that there is no appropriation of public funds of the city to secure the payment of compensation. This section of the Constitution provides: "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled

to such compensation." That contention is fully answered by the decision in *Marchant v. Baltimore, supra*, wherein it was said: "An inquiry on cross-examination as to whether the Port Development Commission had available funds to pay for the property in question, at the time of the passage of its resolution of April 8th, 1924, was disallowed, and this ruling is questioned by the fifth exception. The title of the defendants could not be divested until the payment or tender of duly adjudged compensation, but the ability of the Port Development Commission to provide the necessary funds at the time it determined upon the acquisition of the property was immaterial." The condemnation proceeding and the award of the jury does not divest the owners of the property of their title. This cannot be done without payment or tender of payment. In this case the city had complied with every requisite necessary for it to provide money with which compensation for the property condemned would be made; but the question of whether or not, at the time of the award of the jury, the certificates of indebtedness authorized to be issued, by the legislature and the ordinance of the Mayor and City Council, and approved by the voters, had actually been sold and the money therefor received by the city, has no effect upon the legality of the condemnation proceedings, because the title to the property in question remains in the appellants unless and until the award has been paid or the money actually tendered.

We find no error in any of the rulings of the lower court, and the judgment must be affirmed.

*Judgment affirmed, with costs.*