## STATE ROADS COMMISSION *v.* SMITH

[No. 166, September Term, 1960.]

538

*Decided March 21, 1961.*

*Motion for rehearing filed and denied and opinion modified April 7, 1961.*

The cause was argued before Brune, C. J., and Henderson, Prescott, Horney and Marbury, JJ.

*Carl H. Lehmann, Jr., Special Attorney,* with whom were *C. Ferdinand Sybert, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *Robert H. Archer, Jr., Special Attorney,* on the brief, for appellant.

*Everett L. Buckmaster,* with whom were *T. Leo Sullivan, George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

Brune, C. J., delivered the opinion of the Court.

The State Roads Commission (the Commission) appeals from a judgment in a condemnation case in the Circuit Court for Harford County, entered for the property owner, George L. Smith, upon the jury's return of an inquisition assessing damages at $8,000.[1]

The appellee filed a motion to dismiss the appeal which we shall consider first. He contends that the Commission's invocation of procedure for the review of points or questions by the Judges of the Third Judicial Circuit, sitting *in banc,*

---

1. At the time the Commission's original order for appeal was filed, no judgment had been entered on the inquisition and its appeal was therefore premature. The absence of a final judgment was one of the grounds for the appellee's motion to dismiss filed with its brief. To avoid delay and inconvenience the appellee did not press for summary dismissal. Instead, by agreement of counsel, approved by this Court, a final judgment was subsequently obtained, and on appeal therefrom the case is resubmitted upon the appellee's motion to dismiss based upon another ground therein stated, and upon the record extract and briefs previously filed and the oral argument presented when the case was originally reached. Cf. *State, Use of Bohon v. Feldstein,* 207 Md. 20, 28, 113 A. 2d 100.

pursuant to Art. IV, Sec. 22 of the Constitution of Maryland, barred an appeal to the Court of Appeals, notwithstanding the abandonment of these proceedings for a review by the court *in banc* before any decision (indeed, before any hearing) by such court.

It is not clear from the record at just what point or why the Commission abandoned the court *in banc* review which it originally sought. Points were promptly reserved for consideration of the court *in banc* and a bill of exceptions in support thereof was prepared and filed on April 28, 1960.[2] (See Md. Rule 510.) Review by a court *in banc* in the counties is a procedure long authorized, but rarely used. We understand that the case was about to come up before the Judges of the Third Circuit *in banc* when the Commission sought and obtained an order of the Circuit Court for Harford County filed on May 5, 1960, dismissing its bill of exceptions "without prejudice." On the same day the Commission filed an order for appeal to this Court. (The appellee later sought and obtained an extension of time for transmitting the record, in order to have an opportunity to examine it.)

The appellee contends that the proceedings looking towards a review by the Court *in banc* constituted an election of remedies which precluded an appeal to this Court. This contention necessarily rests on election or waiver, since no basis for estoppel is suggested.

The appellee states, and we agree, that a reservation of points or questions for consideration by the Court *in banc* is a substitute for an appeal to the Court of Appeals. *Costigin v. Bond,* 65 Md. 122, 3 A. 285. The appellee further asserts that such a proceeding "concludes the case as regards the

2. The appellee's appendix contains the appellant's bill of exceptions and a copy of an order dated April 27, 1960, ordering that the points reserved be transmitted for decision to the Court sitting *in banc*. The Commission's attorney's certificate of service refers to copies of both the bill and the order and is dated April 27, 1960. No copy of an order or proposed order transmitting the points is included in the record or shown on the docket entries. We suppose that such an order was prepared and presented, but was not signed and was therefore omitted.

party taking the appeal as effectively as a decision of this Court." That is true with regard to the *decision* of the Court *in banc* as against the party at whose instance the points were reserved. Constitution, Art. IV, Sec. 22; *Shueey v. Stoner,* 47 Md. 167; *Board of Medical Examiners v. Steward,* 207 Md. 108, 113 A. 2d 426. See also *Tyler v. Board of Supervisors of Elections of Baltimore County,* 213 Md. 37, 131 A. 2d 247. But this Section contains no such terms or provisions with regard to the effect of the initiation of such proceedings if abandoned and not carried through to decision.

No case in this State has directly passed upon the question now presented by the appellee's motion to dismiss, and we derive little assistance from authorities elsewhere dealing with statutory provisions differing from our own constitutional provision. At the argument the appellee referred to a statement in 18 Am. Jur., *Election of Remedies,* § 28, that "the rule is that where one has a right to appeal to either of two courts, by an appeal to one of them he irrevocably elects to pursue his remedy there and cannot afterward appeal to the other" and he also referred us to the one case cited in Am. Jur. in support of the passage quoted, *Field v. Great Western Elevator Co.,* 6 N. D. 424, 71 N. W. 135, 66 Am. St. Rep. 611. The *Field* case, applying a North Dakota statute, and some other cases which we have found in our research (such as *Dunkle v. Elston,* 71 Ind. 585, and *Searle v. Whipperman,* 79 Ind. 424), announce the rule that where a party may pursue either of two remedies for the review of a decision, by adopting or claiming one he waives the other; but many, if not most of the cases reaching this result do so where the first alternative chosen has been pursued to decision or judgment. See, for example, *Indiana Mutual Fire Ins. Co. v. Routledge,* 7 Ind. 25 (cited in the *Field* case) ; *Traders Ins. Co. v. Carpenter,* 85 Ind. 350; *Harvey v. Fink,* 111 Ind. 249, 12 N. E. 396. See also 4 C.J.S., *Appeal and Error,* §§ 27, 32, 33, where related problems are considered and many cases from other jurisdictions are collected. In § 27, p. 121, under the heading "Pendency in Another Court", it is stated that: "As a general rule, even when an appellate

review may be had in either of two different courts, if a cause has been brought before one court, it cannot, while such proceeding is pending, also be brought before another court, unless the different proceedings relate to different issues." The implication seems clear that the mere initiation of proceedings for review in the appellate court first chosen would not automatically bar subsequent resort to the other.

Returning to the provisions of our own Sec. 22 of Article IV we find (as already noted) no express provision that the mere taking of steps necessary to a review by a Court *in banc* precludes the abandonment of such review and the taking of an appeal to this Court. (Any such appeal must, of course, be taken within the time allowed therefor, but that presents no problem here.) Nor do we find in Sec. 22 any such implication.

In *Costigin v. Bond, supra* (followed in *Board of Liquor License Commrs. v. Handelman,* 212 Md. 152, 161, 129 A. 2d 78), the actual holding was that where a party failed to reserve a point or question for determination by the Court *in banc* during the day on which the adverse ruling was made, the Court *in banc* was without jurisdiction of the appeal. The opinion in the *Costigin* case is brief. One passage standing alone—where the Court said that the party taking an exception would have the entire sitting of the trial court (that is, until adjournment for the day) "to determine whether he would have his appeal to the Court *in banc,* or to the Court of Appeals"—might seem to lend some support to the appellee's contention. Taken in context, however, it does not seem to us to do so. The Court was there holding that the "sitting" of the trial court meant the sitting for the day on which the questioned ruling was made and not for the whole trial term. The Court pointed out that the "word 'sitting' is not synonymous with 'term' of the Court." We note that the Court was not discussing the time allowed for an appeal to the Court of Appeals, which, under Rules 2 and 27 of this Court relating to appeals then in force, (the Rules of 1883), was two months. The unexpired term of the trial court might have been either greater or less. The question now presented

was simply not involved in the *Costigin* case, and we have no reason to suppose that the Court was then undertaking to decide it.

Under the doctrine of election of remedies, there is some division of authority as to whether or not the mere institution of a suit which is not carried through to judgment constitutes an irrevocable election which bars another suit seeking a different remedy. Maryland follows the rule that it does not so operate. *Bolton Mines Co. v. Stokes,* 82 Md. 50, 33 A. 491; *Hamlin Machine Co. v. Holtite Mfg. Co.,* 197 Md. 148, 158, 78 A. 2d 450. See also *Perdue v. Brittingham,* 186 Md. 393, 401, 47 A. 2d 491. This, we think, is persuasive, at least by analogy, in construing Section 22 of Article IV, *supra.*

The appellee has cited *Giles v. DiRobbio,* 186 Md. 258, 46 A. 2d 611, but it seems to us to have no real bearing on the present case. There, after judgment had been entered for the defendant in an ejectment suit, the plaintiffs filed in the trial court a petition which this Court described as "a camouflaged motion for a new trial." It was based upon alleged newly discovered evidence and sought, upon withdrawal of the then pending appeal, the reinstatement of the case on the trial docket and its subsequent dismissal (subject to such conditions as the court might deem proper), so that the plaintiffs could start over again. The denial of this petition was affirmed on appeal. Much more relevant, we think, to the present case (though still dealing with a different question) is *Tiller v. Elfenbein,* 205 Md. 14, 106 A. 2d 42. There, this Court upheld the granting by the trial court of a partial new trial after the dismissal of an appeal to this Court, which had been entered after the defendant's original motion for a new trial had been overruled. The partial new trial was awarded on a petition filed while the appeal to this Court was pending, but also while the trial court still had discretionary power to strike out its own judgment, and the petition was not granted until after the original appeal had been dismissed. The recent case of *Restivo v. Princeton Constr. Co.,* 223 Md. 516, 521, 165 A. 2d 766, cited and, by analogy, followed the *Tiller* case.

We are of the opinion that a construction of Sec. 22 of Art. IV under which the initiation of proceedings for review by a Court *in banc,* not carried through to hearing and determination, would bar an appeal to this Court (if taken in proper time) after voluntary dismissal or abandonment of the proceedings for review by a Court *in banc,* would not only be inconsistent with our decisions above referred to relating to the election of remedies, but would read into the Section something which is not there either expressly or by implication. It is the decision of the Court *in banc* which is given conclusive effect by that Section as against the party invoking such review; the initiation of proceedings looking to such review is not stated to have any such effect (or, indeed, any effect) against him. The fullness and care with which the conclusive effect of the *decision* of the Court *in banc* against a party unsuccessfully invoking such review are spelled out, and the omission of any like provisions with regard to the *initiation* of proceedings for review *in banc,* strongly imply that such proceedings stopping short of decision were not intended to have any such conclusive effect. We accordingly deny the motion to dismiss the appeal.

On the appeal itself, each of the three questions raised concerns a ruling on evidence relating to damages.

These questions arise out of a condemnation proceeding for the taking of a belt three hundred feet wide, with some additions either in fee simple or by easement, of a total area of 5.41 acres for a new north-south, non-access highway bisecting a twenty-acre tract (Farm 1) owned by the appellee. (There is also included the taking of 3/100 of an acre from the corner of another farm (Farm 2) owned by the appellee, this corner being about six hundred feet away from Farm 1.) To the west of the new road are about four and a half acres of land reached over a right of way from a public highway, and this part of Farm 1 is improved by a two hundred year old stone house and a garage. To the east of the new highway lie about ten acres of Farm 1. They have no access to that highway nor to any other public road, except over one or both of two other farms (Farms 2 and 3) owned by the

appellee. As well as we can make out from the record, the appellee owned three contiguous farms (Farms 2, 3 and 4), aggregating about 350 acres in area, lying generally east of Farm 1, and the eastern boundary of Farm 1 runs in part along the western boundary of Farm 2 and in part along the western boundary of Farm 3. Farm 4 seems to be separated from Farm 1 by Farms 2 and 3. The appellee also owns a fifth farm (Farm 5) about a mile and a half away from Farm 1.

Both sides seem to agree that the proper measure of damages in this case of partial taking and severance is the difference between the value of the property before the taking and the value of what was left after the taking, which represents the value of the land taken plus the amount (if any) of the diminution in value of the remainder of the tract. *Pumphrey v. State Roads Comm.*, 175 Md. 498, 505-506, 2 A. 2d 668. Here the principal clash is with regard to the valuation of the severed ten acres.

The Commission's appraiser, Martin, valued the twenty acre tract before the taking at $22,500; one of the owner's appraisers, Nichols, valued it at $24,000, the other, Joesting, at $23,300. All three placed the land value of Farm 1, apart from land immediately adjacent to the improvements, at $500 per acre. Mr. Martin said that he had not valued the severed ten acres without taking into consideration the fact that the adjoining land was also owned by Mr. Smith, the appellee, and that he could not, when on the stand, give an appraisal of it which did not take this fact into account.

Because of Mr. Martin's inability to state a valuation of the severed ten acres of the twenty acre tract without considering the fact that they adjoined other land belonging to the same owner, the trial court was of the opinion that he could not give a proper "after taking" value to what was left of the twenty acre tract standing as a separate unit, that there was, therefore, no figure properly arrived at to be subtracted from Mr. Martin's "before taking" valuation of this tract and hence that no difference representing a correctly based amount of damages could be determined. On motion

of the appellee, the trial court then struck out the entire testimony of Mr. Martin. Later, on motion of the appellant, based upon a similar ground, the trial court also struck out all of the testimony of Mr. Joesting, one of the appellee's appraisers. This left the testimony of Mr. Nichols as the only appraisal testimony in the case. He did not base his "after taking" valuation on the severed land being adjacent to other land belonging to Smith.

The correctness or incorrectness of the ruling striking out Martin's testimony is the principal point of controversy.

Most of the cases involving condemnation of a part of one of several adjacent or adjoining tracts belonging to a single owner where damages to remaining land have been claimed, have involved claims in respect of one or more of the other tracts, not merely in respect of the remaining portion of the tract from which a part has been taken. Such is necessarily the case where the whole of one of several adjoining tracts in common ownership is taken. The usual test applied in determining the allowability of such damages is whether or not the several adjoining tracts have or have not been used as a unit. See *Marchant v. City of Baltimore,* 146 Md. 513, 126 A. 884; 4 *Nichols on Eminent Domain,* § 14.31, pp. 431-432, and § 14.31 [1] pp. 433, 436-437; *Sharp v. United States,* 191 U. S. 341, affirming 112 Fed. 893 (C. C. A., 3rd); *United States v. Mills,* 237 F. 2d 401 (C. A., 8th); *Minnesota Valley R. R. Co. v. Doran,* 15 Minn. 230; *Haines v. St. Louis, etc., R. Co.,* 65 Ia. 216, 21 N. W. 573; *Hoeft v. State,* 221 Ia. 694, 266 N. W. 571. Generally it is the owner who asserts the unitary use. Here the owner asserts the separateness of use, but claims that the rule should work both ways.

The evidence shows the following: Farm 1 had natural boundaries, was fenced, had always been treated and used as a separate entity, and for years prior to 1957, when the Commission moved into the belt, was rented to a tenant farmer who worked it and Farm 5 (a mile and a half away); and Farm 1 was never farmed in conjunction with either of the adjacent farms. For some years prior to 1957 the only crop grown on the ten acres was hay. Since then the appellee has

occasionally let his cattle graze on this land, but he has not farmed it. It is impossible because of swampy conditions along the boundary between Farm 1 and the adjacent farms to the east to get heavy farm machinery or hay trucks in and out of the ten acre tract. Mr. Nichols testified that the highest and best use for Farm 1 was as (what he called) a twenty acre small estate, rather than as a farm. This use was made impossible by the new road.

From the above evidence—and the Commission offered nothing to contradict it—it would seem clear that Farm 1 had in fact been operated and used as a separate entity and that because of inaccessibility from the other farms for heavy machinery and trucks, it could be used in conjunction with them only to a limited extent as a pasture for cattle.

In the usual type of case where an owner asserts that several tracts constitute but one unit, his purpose probably is to overcome the rule which limits damages for injury to the remainder of the tract from which the property condemned is taken to exactly that—reduction in the value of the balance (as in *Marchant v. City of Baltimore, supra*). The opposite side of the coin is presented where the condemning authority may seek to assess benefits against an adjacent tract owned by the same owner. In these opposite situations, the separate entities or single unit rule should work both ways. Thus, as was said by Mr. Justice Roberts in *United States v. Miller,* 317 U. S. 369, at 376: "As respects other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages [citing *Sharp v. United States, supra,* and *Campbell v. United States,* 266 U. S. 368] ; and unless the legislature so provides, as it may [citing *Shoemaker v. United States,* 147 U. S. 282], benefits are not assessed against such neighboring tracts for increase in their value."

If the determining fact with regard to the admissibility of the appraiser's testimony which took into account contiguousness with other property of the same owner, were simply whether or not Farm 1 had been operated as a single, sepa-

rate unit, we think that the evidence would have supported the trial court's ruling, as a matter of law, that it was a separate entity, without submitting this question to the jury. See 4 Nichols, *op. cit.,* § 14.31, p. 431.

This, however, is not the only factor bearing on the admissibility of the appraiser's testimony. The fact that the severed ten acres of Farm 1 adjoin other land of the same owner seems as relevant in determining the value of the tract left after the taking as the fact that the severed land does not border upon any accessible public road, or, if such were the fact, that the severed land was locked in by the lands of others and had no access to a public road. Evidence of such facts would be admissible in favor of the owner to show the extent of his loss from the taking of a part of his tract, and we see no reason why this rule should not work both ways—in each instance as showing the extent of the owner's loss.

The weight to be given to the fact that the severed land is contiguous to other land of the same owner is quite another matter. In the present case it would seem to be slight in view of the uncontradicted testimony with regard to the relative inaccessibility of the ten acres because of swampy conditions along the boundary between them and the other land owned by the appellee. We think that the ruling striking out Martin's testimony (and the ruling striking out Joesting's, as well) was erroneous, and we are inclined to think that the striking out of Martin's testimony resulted in some prejudice to the appellant. We, therefore, feel constrained to reverse the judgment and to remand the case for a new trial because of this error.

The other questions raised by the appellant, which may recur on a new trial, require little comment. The first of these is whether or not a sale of other property in the neighborhood was or was not a sale of land sufficiently comparable to the property here involved to serve as a basis for Mr. Nichols' opinion as to value. This was a matter largely within the discretion of the trial court. The dissimilarities which affected the weight of the evidence were fully gone into. We

find no abuse of discretion. See *Bergeman v. State Roads Comm.,* 218 Md. 137, 144-145, 146 A. 2d 48.

As to the method by which Mr. Nichols arrived at his "after taking" valuation, the objection is without any substance. Had the appellant's counsel allowed the witness a few moments' opportunity to give the breakdown of figures which the witness offered to furnish, he would have received all that he now complains was lacking. (He might even have discovered what seems to us to have been a minor inaccuracy in Mr. Nichols' computation of the "after taking" value of the four and a half acres lying west of the new highway.) The method of presentation of the "after taking" valuation and the order in which elements entering into the computation are stated seem of no importance. See 5 Nichols, *op. cit.,* § 23.3, p. 346.

The main question here presented may be of importance to the Commission; but since this appears to be the first time that it has been presented to this Court, this seems to be doubtful from a practical point of view; and the scantiness of the Commission's brief also casts doubt upon its importance. We have already expressed our doubts as to any serious monetary consequences of the erroneous ruling. Under these circumstances, we think that, in the exercise of our discretionary power under Maryland Rule 882 a to award costs on appeal, we should direct that the costs be divided.

> *Judgment reversed and new trial awarded; the costs of this appeal to be paid one-half by each party.*