Gen. 35]                                                                                           35

## LIBRARY GOVERNANCE

### ROLES OF COUNTY GOVERNING BODIES, BOARDS OF LIBRARY TRUSTEES, AND LIBRARY DIRECTORS

August 17, 2016

*Mr. Alfred Martin*
*Maryland Advisory Council on Libraries*

On behalf of the Maryland Advisory Council on Libraries, Mr. M. Kiplinger Hine, Jr., the former chair of the Council,[1] requested our opinion on a series of questions regarding the role of county governing bodies and boards of library of trustees ("library boards") in the management of local public libraries. Specifically, he asked which entity—the county governing body or the library board—has authority over the selection and management of library personnel and equipment, and whether a county governing body has the authority to place conditions on the use of library funds. He also asked whether a county, if it has access to library records, is required to maintain the privacy of those records in the same manner as a library board.

As to the first question, it is our view that county governing bodies do not have day-to-day control over library personnel and equipment. Instead, those aspects of library governance are overseen by the library boards and by the library "director"—a State-certified library official who, by statute, exercises broad executive authority over library operations. Further, home-rule counties that have chosen the charter form of government are authorized to enact their own provisions on the powers and duties of library boards. Those counties may create a county department to operate a library system and then place a certain degree of operational control with that department, again subject to the General Assembly's allocation of some duties and powers to the library director. As to all of the counties, resources allocated to the library in a county budget may only be spent for library purposes and in accordance with the county budget. As a practical matter, those constraints limit even a charter county's assignment of library staff to non-library duties and its use of library equipment for non-library purposes.

---

[1]   Mr. Hine passed away on December 27, 2015, after many years of public service on the Advisory Council and, before that, in support of the Calvert County public library system.

The answer to the second question—whether a county may place conditions on the expenditure of library funds—depends on the nature of the condition. A county may require that library funds be spent in accordance with the county's generally-applicable fiscal policies, but it may not condition the use of library funds in such a way as to conflict with State laws and regulations. For example, a county could not condition the use of library funds on the library system's employment of a director who does not meet the qualifications set by State statute. Likewise, a county may not impose conditions that would assign to a county department the powers that, by statute, the General Assembly has assigned to library directors.

As for the third question, it is irrelevant under the Maryland Public Information Act ("PIA") whether a library board's custodian or a county official has physical custody of library records that the PIA makes confidential; neither custodian may permit the inspection of those records.

# I

## A Brief History of Maryland's Library Laws

Maryland's local public libraries have a long history. Much of that history involves a tension between centralized State control and local autonomy. From the State's perspective, local public libraries are an extension of the public education system, which the State has long directed through the State Board of Education. At the same time, local public libraries are of obvious interest to the residents they serve. In recognition of that interest, the General Assembly has long viewed access to public libraries as something requiring financial support by both the State and the localities. With local financial support, however, has come some measure of local control by county governing bodies. Striking the appropriate balance between these competing interests while preserving the independence of professional library staff has been the focus of much of the State's library legislation over the past 150 years.

### A. *Early Initiatives*

The General Assembly's first state-wide legislation on libraries, enacted in 1872, struck that balance in favor of the State. 1872 Md. Laws, ch. 377. In that law, the General Assembly provided for the establishment of public libraries in each school-house district, to be managed "by the teacher, as librarian" and "[f]or the further encouragement of education." *Id.* Local governing bodies were given no apparent role in the operation of

libraries. Funding for the district libraries, however, was to be shared, with each to receive an annual appropriation from the State School Fund, so long as the residents of the district raised matching funds. *Id.*; *see also* Commission on the Public Library Laws, Libraries for the People of Maryland ("Commission Report") at 1 (1970) (reviewing the history of the State's library laws); 72 *Opinions of the Attorney General* 262, 263 (1987).

Legislation enacted ten years later introduced the concept of the library board of trustees as a means to preserve the independence of library professionals. In 1882, Enoch Pratt offered the City of Baltimore a gift of $1,058,000 for the construction of a central library and four branches and an endowment for their maintenance. *See Kerr v. Enoch Pratt Free Library of Baltimore City*, 149 F.2d 212, 215 (4th Cir. 1945). As a condition of his gift, Mr. Pratt insisted that the library system be placed under the "control and management" of a board of trustees—initially appointed by him but self-perpetuating—to safeguard the library from "political manipulation." *Id.* at 218. The General Assembly enacted legislation authorizing Baltimore City to accept Enoch Pratt's gift and providing for partial local funding and yearly audits. 1882 Md. Laws, ch. 181.

In 1898, the General Assembly adopted the Pratt model for all municipalities. Legislation enacted that year granted the governing body of each municipality the power to establish and maintain a public library through a local tax assessment. 1898 Md. Laws, ch. 515. The legislation required each public library to be under the direction of a library board of directors charged with carrying out library operations and given "exclusive control of all moneys collected to the credit of the library fund." *Id.* Finally, it reassigned the management of public libraries to a board with powers and duties similar to those adopted for the Pratt library board but appointed by the municipal governing body. *Id.*

In the same year that it gave municipalities the power to establish local public libraries, the General Assembly also authorized the incorporation of the Washington County Free Library—the first county-wide public library system in Maryland and only the second such library in the United States. 1898 Md. Laws, ch. 511; *see* Washington County Free Library, "About Us," www.washcolibrary.org/aboutus.asp (last visited April 15, 2016). Like the municipal public libraries, the Washington County Free Library was to be controlled and managed by a board of trustees with the power to accept funding from the county and private donors, "make rules for the regulation" of the library, and "perform

all other acts necessary to establish and maintain in perpetuity a free public library for the use of the inhabitants of Washington county."[2]  1898 Md. Laws, ch. 511, §§ 2, 3.

Just four years later, the General Assembly expanded upon the county-wide public library system adopted for Washington County.  Legislation enacted in 1902 authorized roughly half of the counties to establish county library systems to be governed by a library board.[3]  *See* 1902 Md. Laws, ch. 367.  The boards had "exclusive control of the expenditure of all moneys collected to the credit of the library fund" and the power to appoint, remove, and "fix the compensation" of library staff.  *Id.* § 7.  The county commissioners in the covered counties were given the power to appoint the library boards and audit the library's finances.  *Id.* § 8.

At the same time that it granted county commissioners appointment and fiscal oversight roles, the 1902 legislation introduced the concept of statewide guidance on library matters.  It created a free-standing commission appointed by the Governor— known as the Maryland Library Commission—to give advice and counsel to all free libraries in the State on matters such as the "establishment of libraries, the selection of books, cataloguing of books and any other matters pertaining to the maintenance or administration of the library." *Id*. § 15.  The enhanced State role in library operations reflected the "generally recognized" notion that public libraries "form an integral part of a system of free public education and are among its most efficient and valuable adjuncts." *Johnson v. Mayor and City Council of Baltimore*, 158 Md. 93, 103 (1930).

---

[2]  Unlike the boards of trustees for the other municipal libraries, the Washington County board was not appointed by the local governing body.  Instead, a collection of local businessmen led the library initiative and were named to the board in the State law incorporating the library. 1898 Md. Laws, ch. 511, § 1; *see also* The Hagerstown Morning Herald at 3 (Jan. 24, 1945).  The board was self-perpetuating, with the circuit court empowered to exercise appointment authority only in the unlikely event that no board member was willing and able to fill vacancies.  1898 Md. Laws, ch. 511, § 4.

[3]  Twelve Maryland counties were excluded from the law: Frederick, Queen Anne's, Garrett, Carroll, Harford, Howard, Charles, Somerset, Wicomico, Kent, Prince George's, St. Mary's, Worcester, and Baltimore.  1902 Md. Laws, ch. 367, § 16 (listing them in that order).

### B. *Maryland's Statewide System of Public Libraries Takes Shape*

As public libraries proliferated at the local level, a need arose for greater training of library staff and improvement of services in rural communities. *See* Commission Report at 1. In response, the General Assembly in 1945 enacted the Public Library Act, which established the modern, statewide system of public libraries. *Id.*; 1945 Md. Laws, ch. 980. In some ways the 1945 Act built upon the existing system, and in other ways it broke new ground. First, a State library agency, known as the Division of Library Extension, was established within the Maryland State Department of Education to perform centralized functions.[4] 1945 Md. Laws, ch. 980. That central library agency absorbed the responsibilities of the Maryland Library Commission and was given new powers and duties, including the power to establish professional standards for all public libraries. *Id.* Second, all counties were covered by the new law, and all counties received State aid for the purchase of books, so long as they collected a minimum tax or made an equivalent appropriation to the county public library. *Id.* Third, in a departure from the prior law, the Governor was given the power to appoint a board of library trustees for each county that established a county public library. *Id.*

The last of these centralizing features was the emergence of a professional librarian with executive authority over county library systems. Each library board was required to appoint a librarian with qualifications that met State Board of Education standards. *Id.* The librarian was to "act as the general executive officer of the library" with the power to manage normal operations according to "broad policies" approved by the library board. *Id.*

### C. *Control Shifts Back Toward the Counties*

The centralization, statewide standards, and additional State control over library boards raised concerns among the counties. The authority to appoint library board members particularly mattered to county governments because, as before, library boards were imbued with broad authority. For example, each board of library trustees was empowered to: make reasonable rules and regulations for the use of the library; have general control of the library staff, including powers of appointment, dismissal, and the

---

[4] The Division of Library Extension was reorganized in 1969 as the Division of Library Development and Services. Commission Report at 1, n.1.

fixing of salaries; supervise the use of and have custody of all property used for library purposes; and receive all moneys and to control and make all expenditures from the Public Library Fund. 1945 Md. Laws, ch. 980. Given that library boards were now appointed by the Governor, county governing bodies became increasingly dissatisfied with the balance of State and local powers with respect to library management. Commission Report at 7, 11.

The clearest attempt to shift the balance of power back toward the counties occurred in 1967, when the Prince George's County delegation introduced, and the General Assembly adopted, a bill to restructure the governance of that county's library system. The bill proposed to replace the gubernatorially-appointed library board in Prince George's County with a library board to be appointed by the Board of County Commissioners. *See* 1967 Leg., Reg. Sess. H.B. 855. Further, library personnel would have been included in the county's merit system, and financial responsibility would have been transferred to the Board of County Commissioners.[5] *Id.* Then-Governor Spiro T. Agnew vetoed the bill because he favored development of a statewide approach to local control of county public libraries instead of the enactment of county-specific legislation. In his veto message, the Governor noted: "It is extremely important at this time that our libraries in Maryland do not experience any lapse from the high standards established under the State system, both from the standpoint of the ability and independence of board members and the quality of services." 1967 Md. Laws, Veto Messages at 1771.

Although the Governor rejected the legislation specific to Prince George's County, he suggested in his veto message that he was willing to work with legislative leaders to develop a statewide framework for local control of county public libraries, albeit under the State's supervision. *Id.* at 1772. In 1968, the General Assembly responded with a resolution to form the Commission on the Public Library Laws, which it tasked with reviewing and preparing recommendations for a comprehensive revision of Maryland's public library laws. House Joint Resolution No. 43. In its 1970 final report, the Commission acknowledged that the law at the time did not "describe with sufficient precision what should be the exact nature of the relationship" between county governing bodies and

---

[5] By 1967, Prince George's County was moving towards home rule. In 1965, its voters chose not to create a charter drafting board, but they voted to create one in 1968 and adopted a charter in 1970. John T. Willis and Herbert C. Smith, *Maryland Politics and Government: Democratic Dominance* 288 (2012).

library boards, which was a topic of "considerable concern" to both of them. Commission Report at 7. Stating that "local elected officials would have to have more assurances" that local funds appropriated for library purposes were spent in accordance with the particular appropriations, *id*., the Commission proposed legislation to require library boards to "handle funds in accordance with duly adopted budgets and the regulations of the local governing body." *Id*. at 11. That type of fiscal oversight, the Commission stated, would promote "more constant cooperation" between the library system and the local legislative and fiscal bodies by requiring the library to "utilize accounting practices and policies approved by the local governing body and expend its appropriation and other funds consistent with its budget and the regulations of that local governing body." *Id*.

The Commission's recommendation that local libraries be required to follow the local governments' fiscal regulations did not extend to library governance more generally. To the contrary, the Commission confirmed the concept of local libraries as parts of a centralized State system:

> The Commission considers that the best possible development of the statewide system of libraries requires centralization of the leadership, coordination, planning, and evaluation functions with a clear delineation of each agency having responsibility for any of these functions. These functions are being commendably handled by the Division of Library Development and Services.

Commission Report at 2. The Commission not only described the Division of Library Development and Services as "primarily responsible for leadership and the day-to-day and overall operations of all libraries in the statewide system," it recommended bolstering the State's role in the library system by creating the Maryland Advisory Council on Libraries to "gather information on library needs and . . . formulate policy and long-range plans for the total statewide system." *Id*. Overall, the Commission expressed the view that it was "only reasonable that the State have regulatory authority of library systems, financed substantially by State funds, to assure the accomplishment of statewide library goals." *Id*. at 13.

With respect to library board appointments, however, the Commission recommended that the power be returned to the county governing bodies, with restrictions in place to minimize the

role of political influence.  The problem with gubernatorial appointments, the Commission stated, was that they "tend to become a prestige award for political service rather than the appointment of someone interested in and competent to direct the affairs of local libraries."  *Id*. at 11.  The problem was "to some extent the same" at the county level, where the composition of the library boards tended to reflect changes in the "political complexion" of the local governing body.  To address these problems and ensure that library boards are "bi-partisan, if not non-partisan," the Commission recommended that county governing bodies be required to appoint board members from nominees selected by the library board and that members serve five-year terms on a staggered basis.  *Id.*; *see also id*. at 22 (setting forth the proposed legislation).[6]

The Commission also made recommendations specific to charter counties.  Draft legislation attached to the Commission's report proposed that charter counties be authorized to provide, "by the terms of their Charters," the powers, duties, and method of appointment of library boards, "provided, however, that all responsibilities of local boards provided for in [the statute] shall be fulfilled by local governmental agencies specifically designated by the legislative body of the respective local government."  *Id*. at 23.  The greater powers recommended for charter counties did not, however, reflect a conclusion that charter counties should be exempt from the State library laws in other respects.  To the contrary, the Commission observed that exemptions reduce "the strength, unity, and coordination of the statewide system of public libraries" and "defeat th[e] State's purpose in expending public monies to fund the Division of Library Development and Services as the agency to produce a strong, unified and coordinated statewide system."  *Id*. at 13.  In fact, the Commission proposed eliminating the pre-existing exemption of twelve counties from the State library laws.  *Id.*; *see also* n.3 *supra*.

---

[6]  With regard to self-perpetuating library boards, the Commission noted that "there had been no complaint," but that the practice "is not ideal and has produced some boards which are unrepresentative of the community in their composition."  Commission Report at 11.  The Commission proposed that those boards' status not be changed other than to provide "the minimal guarantees that board membership will be representative of the area served by the library, chosen on the basis of ability, character, and demonstrated interest; not restricted by political affiliation, race, sex, color, or creed; and will not include fewer than seven members." *Id.*

The Commission's proposed legislation was introduced substantially as the Commission had recommended, and, as relevant here, the bill passed without material amendments. *Compare id*., pp. 16-33 *with* 1971 Md. Laws, ch. 770. Local governing bodies were given the power to appoint the library governing boards, and charter counties were given the additional power to shift board responsibilities to a county agency. As recommended by the Commission, the 1971 Act required that "all responsibilities of local boards . . . shall be fulfilled by a local government unit or a board of library trustees specifically designated by the legislative body of the respective local government." 1971 Md. Laws, ch. 770, at 1683 (Art. 77, § 171(b)). The 1971 Act also authorized charter counties to alter the organizational structure of their public libraries, either by charter amendment or local law or a combination of both. *Id.* at 1682-83 (Art. 77, § 171). Regardless of what organizational structure was chosen, however, all county systems had the "power[] and dut[y]" to appoint a library "director" with the same executive powers held by the librarian under the 1945 law. *See id.* at 1685 (Art. 77, § 173) (including the appointment of a library director among the list of the library board's duties); *see also id.* at 1687 (Art. 77, § 174, setting forth the library director's powers). The changes made by the 1971 law remain an integral part of the current legal framework, and the Commission's reasoning behind the proposed provisions that the General Assembly adopted remain useful indications of the legislative intent behind those provisions.

## II

## Current Laws on the Powers and Duties of Library Boards

The current statewide library laws are the product of a 1978 code revision that re-organized the provisions of the 1971 Act. *See generally* 1978 Md. Laws, ch. 22. Under the current law, all counties have the authority to "establish, and appropriate an amount to support, a county public library system free from political influence."[7]

---

[7]   The legislative history indicates that the phrase "free from political influence" was not used in the sense of insulating the library boards from the influence of popularly-elected political bodies, but to ensure that library board appointments were made without discrimination on the basis of political affiliation. Although two re-numberings make the history hard to follow, the language that now appears in § 23-401(a) was added through the 1978 code revision process, which moved the education laws from Article 77 to the new Education Article. 1978 Md. Laws, ch. 22. Upon recodification, what is now § 23-401 appeared as

Md. Code Ann., Educ. § 23-401(a).[8]  All counties and Baltimore City have exercised their statutory authority to operate county-wide public library systems.

The funding for the county library systems is provided through the "minimum library program," under which the State and the counties share in the current operating and capital expenses of the county public library systems.  § 23-502(b).  The State provides approximately 40 percent of the total cost of the system's expenses, and the counties provide the other 60 percent through local taxes. § 23-503(a).  Funds provided as part of the minimum library program may only be used for library purposes.  § 23-506(c). Because every county in Maryland has elected to participate in the minimum library program, these broad principles apply across the State.

The day-to-day administration of the county systems is more complicated, as it varies by the form of governance adopted by each county.  For our purposes, the various county library systems fall into two general categories:  (1) systems in non-charter counties, which are run by a board of library trustees with the powers specified by State law; and (2) systems in charter counties, which have some authority to prescribe the powers of the entity that the county establishes to run the system.[9]  Also relevant to your

---

§ 23-301 of the new article, and the Revisor's Note for that section stated that the "reference to a library system 'free from political influence' was derived from the applicable provisions of Art. 77, §§ 172(a)(4) and 173(a)(4)."  1978 Md. Laws, ch. 22, at 473.  Those two sections had provided that the appointment of library board members and library directors must be made without regard to "political affiliation."  The Revisor's Note for the successor to Art. 77, § 173—the newly-recodified § 23-306, which now appears at § 23-406—specifically explains that "the present reference to political affiliation is deleted as unnecessary in light of § 23-301(a)," which, again, now appears at § 23-401. 1978 Md. Laws, ch. 22 at 480.  The Revisor's Notes for the successor to Art. 77, § 172—the newly-recodified § 23-303, which now appears at § 23-403— while less specific, similarly provides no indication that the use of the phrase "political influence" was intended as a substantive departure from the earlier use of the phrase "political affiliation."  In fact, both Revisor's Notes indicate that the revisions were not intended to effect a "substantive change."

[8]  Except where indicated, all statutory cites in this opinion are to the Education Article (2014 Repl. Vol., with 2015 Supplement).

[9]  The systems in Baltimore City and Washington County compose their own category in that they are subject to the 1882 and 1898 laws

questions are the statutory provisions setting forth the duties that the General Assembly chose to assign to the library director instead of to the county governing bodies or library boards and agencies.

### A.    *Library Boards in Non-Charter Counties*

The library systems of non-charter counties "shall be governed by a board of trustees." § 23-401(b).  A board of library trustees generally consists of seven members appointed by the county governing body from nominees submitted by the board of library trustees to serve 5-year terms on a staggered basis.  § 23-403(a), (c).  The library boards' powers are variously permissive (*i.e.*, those that the boards "may" exercise) and mandatory (*i.e.*, those that the boards "shall" exercise).  *See* §§ 23-405 through 407.

The duties that library boards "shall" perform include: "establish and operate" the library; provide for an annual audit of "its business and financial transactions" and make the results public; and report annually to the county governing body and the State Superintendent of Education on the results of the audit, including the number of books and periodicals held, and any other information that the State Department of Education requires.  § 23-405(b)(i), (e).  With respect to personnel matters, library boards "shall" select and appoint a library director, who then serves at the board's pleasure, § 23-406(a), and "shall" establish personnel policies on matters such as salaries, staff classification, benefits, work hours, and "[a]ny other personnel procedures and practices necessary for the efficient operation of the library." § 23-406(b).

Library boards "may":  establish and operate libraries at "any location in the county"; "[d]etermine the policy of the library," and "[a]dopt reasonable rules, regulations, and bylaws for the use of the library and the conduct of its business."  § 23-405(c).  With respect to fiscal matters, a library board may "[a]dvise in the preparation of, and approve, the library budget"; "[r]eceive, account for, control, and supervise, under the rules and regulations of the county governing body, the spending of all public funds received by the library"; and "[u]se the services of the fiscal agencies of the county

---

that, respectively, incorporated them.  We will not discuss them further.  Nor will we discuss the other county-specific provisions within the Education Article dealing with labor issues and other discrete topics.  *See* §§ 23-402, 23-601 through 614 (collective bargaining, Prince George's County and Howard County); § 23-402(d) (minority business enterprise program, Prince George's County), § 23-402(e) (name of Garrett County's system).

governing body." § 23-405(d). As to library personnel, a library board is authorized to appoint any "necessary employees" that the director nominates, § 23-406(a)(2), (f)(3), and to "dismiss any library employee" on the "written recommendation of the library director," § 23-406(e).

## B.   *Library Boards in Charter Counties*

Under § 23-401(b), a charter county has two choices as to the governance of its library system:  "(1) Establish a county library agency and grant it some or all of the powers of a board of trustees; or (2) Have a board of library trustees, provide for the board's selection, and determine its powers."  The language of paragraph (1) suggests that a charter county could elect to have a library agency and confer on it only "some" of the powers provided to library boards under State law.  That possibility would leave unresolved which entity, if any, exercises the library board powers that are not so conferred.

Although we need not conclusively resolve that uncertainty in order to answer the questions Mr. Hines asked, we reach two interpretive conclusions that will play a role in the analysis below. First, a charter county may not grant library board powers to an entity other than a library board or a county library agency.  The current statutory language was adopted through a code revision process that disavowed any intent to make a "substantive change" in the law as it existed under the 1971 version of the law.  1978 Md. Laws, ch. 22, at 473 (Revisor's Note).[10]  As discussed above, that prior version specified that "*all responsibilities* of local boards . . . shall be fulfilled by a local government unit or a board of library trustees."  1971 Md. Laws, ch. 770, at 1683 (emphasis added).  The Education Article thus gives charter counties a choice between only two entities—a library board or library agency; it contains no

---

[10] The Revisor's Note also contains this statement about what now appears as § 23-401(b):  "The detailed provisions of Art. 77, § 171(b) about library organization in charter counties are deleted in favor of the simpler, but no less accurate provisions of subsection (b) of this section." Nothing in this statement, or the Revisor's Note more generally, causes us to depart from the rule of statutory construction that requires us to interpret code-revised language consistent with its pre-amendment meaning. *See*, *e.g.*, *Allen v. State*, 402 Md. 59, 71-72 (2007); 100 *Opinions of the Attorney General* 160, 187 (2015).

provision authorizing a county's governing body to reserve library powers to itself.[11]

Second, although a charter county may choose to give a library board or agency only some of the "may" powers described above with respect to non-charter counties, it must confer *all* of the "shall" powers as a condition of participation in the minimum library program. That much flows from the statute's current form. The language of the statute leaves no room for a local governing body to decide not to confer the "shall" powers; those powers are mandatory responsibilities of a local library board or agency.[12] One of those "shall" powers is the power to appoint a library director, which we discuss next.

## C. *The Library Director*

All library boards must appoint a "director of the library" who either holds "State certification as a professional public librarian" or is eligible to hold that certification and applies for it within 6 months of employment. § 23-406(a), (c). Charter counties may delegate to a library agency the board's authority to appoint the director, § 23-401(b)(1), but the statute does not authorize them to alter the director's powers.[13] Instead, the statute provides that the library director "shall":

---

[11] Anne Arundel County appears to have both a library agency and a library board. That county's charter refers to the County Librarian as a department head, but adopts the State law provisions on the library board's powers. *See* Anne Arundel County Charter § 552 ("[N]othing in this Charter contained shall be held or construed as affecting or [in] anywise changing the organization, operation and administration of the County library system by the Board of Library Trustees as provided by public general law.").

[12] This outcome also seems to be consistent with the statute as it existed prior to code revision. That prior version required that the local board or agency fulfill "all *responsibilities*" of the local board . . . shall be fulfilled by a local government unit or a board of library trustees." 1971 Md. Laws, ch. 770, at 1683 (emphasis added).

[13] The provision of the 1971 law that established the position of library director begins by saying "except as otherwise provided in Section 171," which might be read as suggesting that a charter county could forgo the appointment of a library director under the flexibility provided by that section. Although § 171 did provide charter counties some flexibility, it nevertheless required that they assign "all responsibilities" of the library board—which under § 173 includes the

(1)   Act as the general executive officer of the library and be responsible for the management of its operations in accordance with policies approved by the board of library trustees;

(2)   Prepare the annual budget of the library, and present it to the board for approval;

(3)   Nominate for appointment all library employees in the county library system; and

(4)   Establish reasonable rules and adopt regulations for the use of the library system subject to approval by the board of library trustees.

§ 23-406(f).  A discussion as to the governance of local public libraries thus must account for the State-mandated role of the library director as well as the roles of a library board or department and the county governing body.

### III

### Analysis

#### A.   *Selection and Management of Library Personnel and Equipment*

Your predecessor asked whether a county governing body could unilaterally reassign library employees to departments in county government or re-purpose library equipment to a non-library use.  We will address each question separately and within the context of both a non-charter county and a charter county that elects to confer library powers on a local library agency.

#### 1.   **Library Personnel**

With respect to library personnel, we focus on § 23-406, which governs personnel issues.  In construing that provision, we

---

appointment of a library director—either to a board or to a library agency.  The cross-reference to § 171 in § 173 thus seems designed to direct the reader to the source of the charter counties' flexibility to create a library agency and not to render optional the appointment of a library director. That much seems to be confirmed by § 179 of the 1971 law, which contemplates that there would be a "director of the library" even "if no board of trustees exists."  1971 Md. Laws, ch. 770, at 1694 (Art. 77, § 179).

rely on well-settled principles of statutory interpretation. We "begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also." *Mayor and City Council of Baltimore v. Chase*, 360 Md. 121, 128 (2000) (internal quotation and citations omitted). When it is possible to draw conclusions based on the plain meaning of the statutory language, we "neither add nor delete language so as to reflect an intent not evidenced in that language." *Id.* at 128 (internal quotation omitted). Nor do we read the statute in isolation. As just one section of Maryland's public library laws, it "must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *State v. Johnson*, 415 Md. 413, 421 (2010). In placing § 23-406 within its statutory context, we thus also look to § 23-506(c), which requires that library funds be used only for library purposes.

### a.    Non-Charter Counties

As to non-charter counties, the statute expressly grants to the board of library trustees the power to appoint and dismiss library personnel on the recommendation of the director. § 23-406(e), (f)(3). The board also may delegate to the library director its authority to appoint "any other necessary employees." § 23-406(a). The plain language of the statute is broad and inclusive, extending from the top to the bottom of the library hierarchy, and nothing suggests that these counties may delegate the board's and director's authority to a third entity or to a different official. Similarly, the statute delegates to the library board, and not to anyone else, the authority to establish personnel policies on a wide range of topics, including staff classification, salaries and benefits, work conditions, hours of work, grievance procedures, and "any other personnel procedures and practices necessary for the efficient operation of the library." § 23-406(b). Finally, if an employee requests a hearing regarding a suspension or dismissal, it is held before the board of library trustees. § 23-406(d), (e).

In short, § 23-406 assigns control over all library personnel matters to the board of library trustees and the library director; the statute gives no role to the county governing body in the appointment, removal, assignment, or reassignment of library personnel. By giving a significant role to the State-certified library director, the statute furthers the broader purposes articulated by the Commission—and presumably adopted by the General Assembly when it enacted the Commission's recommendations with little

change—that the system of public libraries in Maryland be a "strong, unified and coordinated statewide system." Commission Report at 13. Accordingly, in our opinion, the governing bodies of non-charter counties lack the authority either to unilaterally reassign library employees to county departments or to override the personnel policies that a library board has adopted under § 23-406(b).

### b.    Charter Counties

The same result holds in a charter county that has elected to assign library governance to a library board and adopt the State law provisions applicable to that body. In that instance, the difference in form of county governance does not alter our analysis. Our analysis is altered somewhat when a charter county has chosen to "determine" the powers of their boards of trustees or establish a county library agency, *see* § 23-401(b), but we reach basically the same conclusion.[14] Although the grant of authority to charter counties to "determine" a county library agency's "powers" might seem open-ended, a local government's authority to operate under a charter does not include the authority to enact laws that would conflict with general laws enacted by the General Assembly. *See*, *e.g.*, *Mayor of Baltimore v. Hart*, 395 Md. 394, 407, 409 (2006); *see also Coalition for Open Doors v. Annapolis Lodge No. 622*, 333 Md. 359, 380, n.39 (1994). Although § 23-401(b) authorizes charter counties to determine the powers of a library board or to create a library agency with "some or all" of a library board's powers, the statute that defines the *director's* powers—§ 23-406— does not contain analogous language and thus does not authorize charter counties to alter the library director's powers, much less in a way that would conflict with the statute.

In our opinion, the charter counties' authority to structure the governance of libraries is circumscribed by the statutory role assigned to library directors. First, and most specifically, a charter county may not adopt measures to empower a county agency to unilaterally appoint, suspend, or dismiss library employees, because § 23-406 expressly gives the library director a role in all of those actions. Likewise, we conclude that a county agency's

---

[14] Eleven Maryland counties have ratified charter forms of government: Anne Arundel, Baltimore, Cecil, Dorchester, Frederick, Harford, Howard, Montgomery, Prince George's, Talbot, and Wicomico. Maryland Manual On-Line, http://msa.maryland.gov/msa/mdmanual/01glance/html/county.html (last visited April 18, 2016).

unilateral removal of a library employee from library duties by "reassigning" the employee to other county duties would conflict with the legislative intent that library directors, certified by the State as professional public librarians, § 23-406(c), play a substantive role in deciding who should be dismissed from employment in the county library system.[15]  *See* § 23-406(f)(3) (requirement that the director nominate "all library employees" for appointment).

Second, and more generally, we conclude that a charter county's authority with regard to library governance is limited by § 23-406(f)(1), which designates the library director as the "general executive officer of the library" and makes the library director "responsible for the management of its operations." This "executive" function, when used in laws that apportion governmental powers, generally encompasses the implementation of laws and policies, as opposed to the formulation of them. *Queen Anne's Conservation*, *Inc. v. County Comm'rs of Queen Anne's County*, 382 Md. 306, 324-27 (2004) (distinguishing executive powers from legislative powers); *see also*, *e.g.*, *Eggert v. Montgomery County Council*, 263 Md. 243, 259 (1971) (holding that the construction of public improvements pursuant to existing law is executive in character); 78 *Opinions of the Attorney General* 275, 279-80 (1993) (collecting Maryland cases in which the Court of Appeals addressed the scope of executive powers for various purposes).  State law assigns to the director the executive function of operating the library system in a manner that is consistent with the personnel policies and budget approved by a library board or agency and the fiscal policies of the county.  Regardless of whether a charter county chooses to establish a county library agency, State law does not authorize that county either to assume the library director's executive function or delegate it to another entity.

Finally, applicable to all counties is the statutory prohibition on the use of State and local library system funds for non-library purposes.  § 23-506(c).  A library system employee who has been

---

[15] Depending on the county, an involuntary transfer of an employee from a position in the library system to a position in the county government might well be a termination of employment, subject to the procedures in § 23-406. You have not asked us to address the employment-law implications of transfers, which could vary with such circumstances as the provisions of a collective bargaining agreement, and, for charter counties, the extent to which the library agency has adopted county-wide personnel policies.

assigned non-library duties thus may not be paid for that work from library system funds.

### 2.    Library Equipment

Your predecessor also asked whether a county governing body could "appropriate" equipment purchased for library use for other uses.   The statutory language does not address the repurposing of equipment for non-library use, but it does address the purchase of library equipment more generally through provisions governing the administration of library funding.

Three funding provisions are relevant here.  First, as discussed above, § 23-506(c)(1) requires that funds provided under the minimum library program "may be used only for library purposes." That provision suggests that a county governing body may not repurpose to a non-library use equipment that was purchased with library funds.  By contrast, § 23-506(b) suggests a greater role for the county governing body.  It provides that *capital* expenses— which are defined by statute to include the purchase of "equipment and furniture for . . . library buildings," § 23-501—are administered by the county governing body, while *operating* expenses are administered by the board of library trustees.  § 23-506(b).  Finally, § 23-405(d)(2) seems to fall somewhere in the middle:

> Each board of library trustees may receive, account for, control, and supervise, under the rules and regulations of the county governing body, the spending of all public funds received by the library.

§ 23-405(d)(2).

Before attempting to construe all three of these provisions together, we must first attempt to give meaning to § 23-405(d), which is ambiguous.  It is not clear whether the Legislature intended that a county governing body, through its "rules and regulations," would have the power to direct the use of capital expense funds beyond the original purchase of equipment for library use or, alternatively, whether the board of library trustees, by virtue of its power to "control, and supervise" the spending of all public funds received by the library, acquires full ownership and control of library equipment after it is purchased.  To resolve the ambiguity created by § 23-405(d)(2), we seek an explanation of what was intended when that language was adopted.  *See*, *e.g.*, *Baker v. Montgomery County*, 427 Md. 691, 706 (2012) (where the language of a statute is ambiguous, a court may rely on legislative

history to "discern the legislative purpose, the ends to be accomplished, or the evils to be remedied" (internal quotation omitted)).

The origins of § 23-405(d)(2) can be traced to the 1970 Commission Report. Counties had expressed concern that their "elected officials should have control to prevent transfer of funds appropriated for one library purpose from being used for another library purpose," and thus the Commission sought to provide "more assurances" that funds would be expended for the purpose designated by the people's representatives. Commission Report at 7. To address this concern, the Commission recommended the following statutory language:

> [Each board of library trustees may] receive, account for, control and supervise, in accordance with its duly adopted budget and the regulations of the local governing body, the expenditure of all public funds received by the library.

Commission Report at 24. The Legislature adopted the Commission's recommendation without substantive change when it enacted what is now § 23-405(d)(2).[16] In light of this legislative history, we do not read § 23-405(d)(2) as extending the county governing body's role as administrator of expense funds beyond the original purchase. That provision simply assures local elected officials that the library board will spend library funds for their designated library purpose.

Putting all three relevant provisions together, it is our view that county governing bodies have the authority to designate which of the appropriated library funds are capital funds and which are operating funds. That outcome seems to flow from § 23-405(d)(2), which makes the expenditure of library funds subject to the "rules and regulations of the county governing body." Once the county has made the allocation between capital and operating expenses, the county may further specify the *particular use* to which the capital funds may be put. That much flows from § 23-506(b).

---

[16] *Compare* Commission Report, pp. 16-33 *with* 1971 Md. Laws, ch. 770. The only difference between the Commission's recommended language and what now appears as § 23-405(d)(2) is that the Commission's version refers to a "duly adopted budget" and regulations whereas the enacted language refers to "rules and regulations"—a difference that we do not find meaningful in this context.

Under no circumstance, however, may minimum library program funds be expended for non-library purposes. That much flows from § 23-506(c).

An example might illustrate how these provisions interrelate. A county governing body may direct that a certain amount of capital funds be used to purchase computers for the library system. In that event, the board or the library agency may not spend those capital funds for any other purpose. By contrast, a county provides library operating funds essentially in a lump sum; § 23-506(b)(1) gives the library board (or agency) the power to administer those funds.

We see no evidence, however, that the General Assembly intended to give the county governing body the continuing power to direct the *use* of equipment after it is placed in service. Rather, day-to-day decisions about how to use library equipment fall within the library director's executive function, subject to the policies and general oversight of the library board. *See* § 23-406(a)(1) (director serves "at the pleasure of the board"), (f)(1) (director acts as executive officer "in accordance with policies approved by the board").

Accordingly, as to both charter and non-charter counties, it is our opinion that a county governing body may not appropriate for other uses equipment that was purchased for library use. Funds provided by the county and State as part of the minimum library program must be used only for library purposes. § 23-506(c). A county's dedication of equipment purchased with minimum library program funds to a non-library use would conflict with this mandate. And, as with personnel actions, decisions involving the allocation of library equipment must be consistent with the role that the General Assembly has assigned to the library director. Under § 23-406(f)(1), the library director "shall . . . [a]ct as the general executive officer of the library and be responsible for the management of its operations in accordance with policies approved by the board of library trustees." These duties, placed by the General Assembly with State-certified library professionals, could not be meaningfully performed by directors if non-library personnel and entities were given unilateral authority to declare library equipment excess and remove it.

### B. *A County Governing Body's Placement of Conditions on Library Funds*

Your predecessor also asked whether a county governing body has the authority to place conditions on the specific use of

library funds.    Library funding originates with the county governing body but then quickly becomes intertwined with other entities.   Under the county-State minimum library program, the State shares in the current operating and capital expenses of participating county public library systems.  § 23-502(b).  All State and county funds provided as part of the minimum library program may only be used for library purposes.  § 23-506(c).

More specifically, the library boards administer "current operating funds," while the county governing bodies administer "capital expense funds."    § 23-506(b).    Although the term "operating funds" is not defined, the term "capital expense" means "principal and interest payments, or current capital spending or accumulation" for purchases of land and buildings and the "purchase of equipment and furniture for these library buildings." § 23-501(c).  In addition, while a library board may "[r]ecommend to the county governing body the acquisition, use, or conveyance of property for any purpose valid under [the State's county library laws]," § 23-405(f)(3), the county governing body has the authority to appropriate funds for those purposes.  § 23-401(a).

Normally, the authority to appropriate funds—and to reduce or eliminate an appropriation—includes an implicit authority to set conditions.  85 *Opinions of the Attorney General* 167, 171 (2000) (citing *Bayne v. Secretary of State*, 283 Md. 560, 574 (1978)). Thus, in the absence of a provision of law to the contrary, a county may impose conditions on a grantee's receipt of county funds, "including a direction as to the manner of expenditure of those funds."  *Prince George's County v. Chillum-Adelphi Volunteer Fire Dep't, Inc.*, 275 Md. 374, 381 (1975).  However, a county may not impose a condition that conflicts with State law, deals with a subject matter that the General Assembly has expressly reserved for itself, or deals with an area in which the General Assembly has "acted with such force that an intent to occupy the entire field must be implied."  *McCarthy v. Board of Educ. of Anne Arundel County*, 280 Md. 634, 639 (1977).  State preemption of local law effectively limits the authority of a county to impose conditions that would otherwise be valid under the county's authority to reduce or eliminate appropriations.  *See Howard County v. Potomac Elec. Power Co.*, 319 Md. 511, 527-28 (1990).

The application of the preemption doctrine to county budget conditions would depend on two circumstances: the type of funds and the nature of the condition.   The type of funds makes a difference because the statute gives county government bodies somewhat greater leeway with respect to capital expenses than they

have with respect to operating expense. The county governing bodies "administer[]" the former, while the library boards administer the latter. § 23-506(b).

As to the nature of the condition, we cannot be very specific, as your predecessor did not request an opinion with respect to any particular type of budget condition. Suffice it to say that prior opinions of this Office have invalidated on preemption grounds some types of budget conditions on education appropriations. *See* 85 *Opinions of the Attorney General* at 175 (county may not condition funds on the creation of two audit positions, in light of the school board's control over staffing decisions); 81 *Opinions of the Attorney General* 26, 34 (1996) (county may not condition eligibility for a grant on a school's agreement to pursue a particular program of instruction); *see also McCarthy*, 280 Md. at 650-51 (the State has "forcibly" occupied the field of education (internal quotation omitted)). Instead, our analysis here will focus on preemption and the permissibility of budget conditions more generally.

The historically close association between public libraries and public schools suggests that the State's preemptive reach is particularly broad here. The General Assembly has found public libraries to be "essential components of the educational system." § 23-101(a)(1). Indeed, early public libraries originated as school-house district libraries intended "[f]or the further encouragement of education." 1872 Md. Laws, ch. 377. The Court of Appeals has similarly recognized that public libraries "form an integral part of a system of free public education and are among its most efficient and valuable adjuncts." *Johnson*, 158 Md. at 103. Today, the central library agency is housed within the Maryland State Department of Education and recommends to the State Board of Education rules and regulations to implement the statewide library system. §§ 23-102, 23-106(b)(10). The leadership of the Division of Library Development and Services is critical because it is "the only State agency having regular contact with and any legal responsibility for the total library enterprise." Commission Report at 3.

Maryland's public library laws have been revised multiple times, each time with an eye toward a more comprehensive framework. Rather than authorizing county public libraries and remaining silent on their governance, the General Assembly carefully outlined the appointment, composition, and powers and duties of the board of library trustees. *See* §§ 23-403 through 23-405. And, in 1971, as a further indication of its intent that local libraries be components of a statewide system, the General

Assembly repealed the provisions that had exempted some counties from the library laws. 1971 Md. Laws, ch. 770. In short, the State has addressed how library governance is to be allocated among county governing bodies, library boards or agencies, and library directors and has thereby limited the types of conditions that a county governing body may place on the expenditure of library funds.

In our opinion, a county governing body may place a condition on the specific use of library funds only to the extent that the condition does not intrude upon the statutory framework developed by the General Assembly. *See Chillum-Adelphi Volunteer Fire Dep't, Inc.*, 275 Md. at 381 (stating that charter county could impose conditions in the "absence of some provision of law to the contrary, constitutional or statutory"); 85 *Opinions of the Attorney General* at 172-74 (discussing preemption in the context of county education budgets). Whether State law would preempt a particular condition depends on the type of condition at issue.

## C. *The Privacy of Library Records Under the PIA*

In his letter requesting this opinion, your predecessor asked whether a "county" that has access to library records is required to maintain the privacy of those records in the same manner as a board of library trustees. This question is governed by the Maryland Public Information Act ("PIA"),[17] which provides in relevant part:

> (a) Subject to subsection (b) of this section, a custodian shall prohibit inspection, use, or disclosure of a circulation record of a public library or any other item, collection, or grouping of information about an individual that:
>
> (1) is maintained by a library;
>
> (2) contains an individual's name or the identifying number, symbol, or other identifying particular assigned to the individual; and

---

[17] Md. Code Ann., Gen. Prov. ("GP") §§ 4-101 through 4-1001 (2014 Repl. Vol., 2015 Supp.). The Education Article contains analogous provisions, but they apply only to the circulation records of free association, school, college, and university libraries. *See* Educ. § 23-107.

(3) identifies the use a patron makes of that library's materials, services, or facilities.

(b) A custodian shall allow inspection, use, or disclosure of a circulation record of a public library only:

(1) in connection with the library's ordinary business; and

(2) for the purposes for which the record was created.

GP § 4-308. When a library record meets the criteria stated in GP § 4-308, the PIA generally prohibits the disclosure of that record.

At the outset, it is important to note that we have not been asked whether it is appropriate for a county official to have routine access to a record subject to GP § 4-308. We are not in this opinion providing advice on that legal issue, which may require an analysis of First Amendment law,[18] national security law,[19] and State records retention laws.[20] The question posed to us instead assumes that a county has access to library records in some circumstances and asks only for our advice on the legal obligations of a county official who in fact has possession of such records. We will accept

---

[18] The disclosure of library patrons' reading choices could raise First Amendment concerns. *See*, *e.g.*, *Tattered Cover*, *Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) ("The First Amendment embraces the individual's right to purchase and read whatever books she wishes to, without fear that the government will take steps to discover which books she buys, reads, or intends to read.").

[19] The various federal laws pertaining to national security investigations might impose duties on a custodian. *See*, *e.g.*, Susan Nevelow Mart, The Chains of the Constitution and Legal Process in the Library: A Post-USA Patriot Reauthorization Act Assessment, 33 Okla. City U. L. Rev. 435 (2008) (discussing the application of the USA PATRIOT Act to public libraries).

[20] For example, although a library records custodian may store confidential library records at a facility under another custodian's physical control, a library board or library agency may not allow those records to be stored in a way that provides access not permitted by the PIA. *See*, *e.g.*, Md. Code Ann., State Gov't § 10-611(b)(1) (requiring that units of State government have a records management program with procedures "to ensure the security of the records").

that assumption solely for purposes of answering the specific legal question that has been posed to us.

With that limitation in place, the fact that a county official might possess library records does not alter the level of protection afforded such records. There are two types of custodians under the PIA. The "official custodian" is the "officer or employee of the State or of a political subdivision who is responsible for keeping a public record," GP § 4-101(f); here, that would probably be the library director, who, as "the general executive officer of the library," manages library operations in accordance with the policies approved by the library board. Educ. § 23-406(f)(1). The term "custodian" also includes, however, "any other authorized individual who has physical custody and control of a public record." GP § 4-101(d). As a result, a county official who is authorized to have access to a library record also might qualify as a "custodian," though not an "official custodian." Because GP § 4-308 applies to "custodians" generally, the obligation to maintain the privacy of library records applies equally to the library director and any county official who might possess such records.[21]

County officials who have access to library records are not authorized to provide broader access than the PIA allows. Counties lack the authority to adopt measures that conflict with a State law by permitting that which the State law prohibits. *See*, *e.g.*, *Police Patrol Sec. Sys.*, *Inc. v. Prince George's County*, 378 Md. 702, 714 (2003) ("A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." (quoting *Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 580 (2001)); *see also* 86 *Opinions of the Attorney General* 94, 106-08 (2001) (explaining that a local ordinance cannot establish an exception to the PIA that is not allowed under State law). A county measure that permitted the disclosure of records protected by GP § 4-308 would be invalid for that reason alone. Accordingly, a non-library custodian to whom a library has transferred library records must comply with the PIA when considering a request for those records.

---

[21] The two exceptions to the protections provided by GP § 4-308(a) pertain to library operations and so would not usually authorize disclosure by non-library personnel. *See* GP § 4-308(b); Educ. § 23-406(f)(1) (making the library director responsible for library operations).

### III

### Conclusion

The balance of authority among county governing bodies, boards of library trustees or a charter county's library agency, and library directors is an important topic throughout Maryland's public library laws. Although it is difficult to generalize about which entity has primary authority over the many types of personnel and equipment issues that might arise, there are three overarching principles to help guide the relevant participants. First, library funds must be used for library purposes and spent in accordance with a duly adopted budget. That principle limits the ability of both the county library and the county governing body to assign library employees to non-library positions and use library equipment for non-library purposes. Second, the General Assembly has made the library director, who must be certified by the State for the position, the "executive officer" of the library. While there might be some overlap between the roles of the director and the library board or agency, we see no indication that a county governing body may itself manage day-to-day library operations, either directly or through conditions that go beyond the fiscal roles assigned to it. Third, because library records are protected under the PIA, a county official in possession of such records must maintain their privacy in the same manner as a board of library trustees.

> Brian E. Frosh
> Attorney General of Maryland
>
> Alan J. Dunklow
> Assistant Attorney General

Adam D. Snyder
Chief Counsel, Opinions & Advice

* This opinion was revised after issuance to include a citation to 72 *Opinions of the Attorney General* 262 (1987).